[Cite as *Cable v. Cable*, 2015-Ohio-4291.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| TAWNI M. CABLE | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2015-CA-11 |
| | : | |
| v. | : | T.C. NO. 14DR613 |
| | : | |
| KYLE R. CABLE | : | (Civil appeal from Common |
| | : | Pleas Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___16th___ day of _____October_____, 2015.

. . . . . . . . . .

JENNIFER J. WALTERS, Atty, Reg. No. 0066610, 80 S. Plum Street, Troy, Ohio 45373
        Attorney for Plaintiff-Appellee

BRIAN A. SOMMERS, Atty. Reg. No. 0072821, 130 W. Second Street, Suite 840, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Kyle R. Cable appeals from a judgment of the Darke County Court of Common Pleas, Domestic Relations Division, overruling his objections and adopting the decision of the magistrate granting plaintiff-appellee Tawni M. Cable's petition for a domestic violence civil protection order (CPO). Kyle filed a timely notice of

appeal with this Court on May 13, 2015.

{¶ 2} On December 4, 2014, Tawni filed a petition for a domestic violence CPO in the Darke County Court of Common Pleas. An ex parte hearing was held on December 11, 2014, and Tawni was granted an ex parte domestic violence CPO. A full hearing was held before a magistrate on January 26, 2015, during which both parties testified. Both parties were represented by counsel.

{¶ 3} At the hearing, evidence was adduced which describes the incident that forms the basis for the instant appeal. On the night of December 1, 2014, Tawni testified that Kyle texted her at 9:40 p.m. and then arrived shortly thereafter at her residence located in Arcanum, Darke County, Ohio, between approximately 9:45 and 10:00 p.m. At the time of the incident, the parties were in the midst of divorce proceedings, which involved a custody dispute regarding the three children born as a result of the marriage. When Kyle arrived at Tawni's residence, she walked outside to speak with him. Kyle remained in his vehicle during their brief conversation. At some point, the parties began arguing, and Kyle struck Tawni in the face with his fist twice, breaking her glasses. After striking Tawni, Kyle immediately drove away. Tawni testified that Kyle called her on her cell phone at approximately 10:49 p.m., but she did not answer because she was afraid that he would return to her house and harm her further. Before she called the police, Tawni testified that she contacted her mother and another individual.

{¶ 4} At approximately 11:22 p.m., Tawni called the police in order to report that Kyle had struck her. Darke County Sheriff's Deputy Jamie Joseph received the dispatch regarding Tawni's report of domestic violence. Upon arriving at Tawni's residence at approximately 11:30 p.m., Deputy Joseph observed that the area around her eye was red

and beginning to swell. Deputy Joseph testified that he also observed what appeared to be knuckle indentations around the area of the redness and swelling on Tawni's face. Tawni explained to Deputy Joseph that she had an argument with Kyle and that he had struck her twice. We note that although Tawni testified at the hearing that Kyle was drunk when he hit her, she made no mention of his alleged inebriation to Deputy Joseph when he initially interviewed her at her residence. Tawni also testified that the entire interaction between her and Kyle lasted approximately five to ten minutes. Tawni testified that she spoke with an attorney before filing the petition for a domestic violence CPO.

{¶ 5} After speaking with Tawni, Deputy Joseph interviewed Kyle who denied striking Tawni. Kyle also denied being present at the residence at the time that Tawni asserted that he had arrived. Specifically, Kyle testified that he dropped his son off after basketball practice at Tawni's residence at approximately 7:30 p.m. on the night in question. Kyle further testified that after dropping off his son, he went to his residence to "clean up." Kyle testified that at approximately 8:30 p.m., he went to visit his girlfriend, Melissa Claudy, at her place of employment, the Fairlawn Steakhouse. Kyle testified that he had dinner and drank one alcoholic beverage before leaving the restaurant shortly after 10:00 p.m. Melissa testified that Kyle left the restaurant "around 10ish." Additionally, Kyle admitted that he texted Tawni at 9:40 p.m., but claimed that he only wanted to discuss the recent behavior of their oldest child with her.

{¶ 6} Upon leaving the restaurant, Kyle testified that he drove to Melissa's house to watch her children until she got off work. Patricia Campbell, Melissa' mother, testified that she was watching her daughter's children on the evening of December 1, 2014.

Patricia testified that Kyle arrived at Melissa's residence at approximately 10:15 p.m. Patricia testified that she and Kyle talked for a moment, before she left to go home. Kyle testified that he tried to call Tawni at approximately 10:49 p.m., but she did not answer.

{¶ 7} Essentially, Kyle's defense at the CPO hearing was that the timeline he presented established that he was not present at Tawni's residence when she alleges that he struck her and therefore, the incident never happened. Kyle asserted that Tawni fabricated the entire incident in an effort to gain an advantage in the parties' divorce and custody proceedings. We note that Kyle was never arrested or charged with domestic violence for striking Tawni.

{¶ 8} Deputy Joseph testified that he did not think that the injuries he observed to Tawni had been self-inflicted. Deputy Joseph also testified that based on his investigation, Kyle would have had time to travel to Tawni's residence and strike her after he left the restaurant but before he arrived at Melissa's house to watch her children. When he interviewed Kyle, Deputy Joseph observed that he did not have any scrapes or bruises on his hands. Deputy Joseph testified, however, that it is not uncommon for a perpetrator to have no marks on his hands after striking someone. Additionally, Deputy Joseph testified that in his experience, it was not at all uncommon for a victim of domestic violence to wait hours, or even days, before involving the police and making a report.

{¶ 9} On March 25, 2015, the magistrate granted Tawni's petition for a domestic violence CPO. The magistrate ordered that the CPO remain in effect until December 11, 2015. In her decision, the magistrate found Tawni's recitation of events to be more credible than Kyle's. Kyle filed objections to the magistrate's decision on April 2, 2015. Kyle filed supplemental objections thereafter, on April 7, 2015. On April 20, 2015, Tawni

filed her response to Kyle's objections. On April 27, 2015, the trial court issued a judgment entry adopting the magistrate's decision, finding that it was "reasonable and supported by both the law and the facts as adduced at the hearing."

{¶ 10} It is from this judgment that Kyle now appeals.

{¶ 11} Kyle's sole assignment of error is as follows:

{¶ 12} "THE TRIAL COURT LACKED SUFFICIENT, COMPETENT, CREDIBLE EVIDENCE TO PROVE BY PREPONDERANCE OF THE EVIDENCE THAT APPELLANT ENGAGED IN AN ACT OF DOMESTIC VIOLENCE."

{¶ 13} In his sole assignment of error, Kyle argues that the trial court erred by adopting the magistrate's decision granting Tawni's petition for a CPO because she adduced insufficient evidence to support a finding that Kyle engaged in an act of domestic violence against her as defined by R.C. 3113.31. Kyle also argues that the trial court's adoption of the magistrate's decision was against the manifest weight of the evidence.

{¶ 14} As we stated in *Calicoat v. Calicoat*, 2d Dist. Miami No. 08CA32, 2009-Ohio-5869, ¶ 15:

> When an appellant argues that a finding of domestic violence on which a CPO was issued is against the manifest weight of the evidence, "we must decide whether the court's decision was supported by sufficient competent, credible evidence." *Young v. Young,* 2d Dist. Greene No.2005–CA–19, 2006–Ohio–978, at ¶ 22. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris v. Foley Construction Co.*, 54 Ohio

St.2d 279, 376 N.E.2d 578 (1978), syllabus. "Weight" of the evidence refers to the inclination of the greater amount of credible evidence offered in a trial to prove the issue established by the verdict that was reached. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

*Id.*

{¶ 15} Where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court. *Id.* at ¶ 16. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observations in weighing the credibility of the proffered testimony." *Id.*, citing *Seasons Coal Company, Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 16} Initially, we note that Kyle complains that the magistrate "only made a two sentence finding of fact." Thus, Kyle argues that "the finding of fact by the magistrate and the decision by the judge do not present sufficient facts to show that they found by a preponderance of the evidence that domestic violence could have occurred." We note, however, that Kyle failed to file a request for findings of fact or conclusions of law from the decision. A judgment entry may be general unless a party makes a specific request for separate findings of fact and conclusions of law. Civ.R. 52. Moreover, if a party fails to request findings of fact and conclusions of law, we are forced to presume the regularity of the lower court proceedings. *In re Youngerman*, 2d Dist. Miami No. 2002-CA-61, 2003-Ohio-5397, ¶ 20.

{¶ 17} R.C. 3113.31(A) states, in pertinent part:

As used in this section:

(1) "Domestic violence" means the occurrence of one or more of the following acts against a family or household member:

(a) Attempting to cause or recklessly causing bodily injury;

(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code. ***

{¶ 18} In support of his argument that the trial court erred by adopting the decision of the magistrate granting the domestic violence CPO, Kyle cites a recent opinion from this Court, *Barton v. Barton*, 2d Dist. Greene No. 2014-CA-21, 2015-Ohio-31. In *Barton*, we found that the trial court erred by entering a civil protection order against the appellant because there was insufficient evidence in the record that the appellee was placed, by force or threat of force, in fear of imminent serious physical harm. *Id.* at ¶ 20. We also found that there was no evidence of physical contact between the parties following appellant's filing for divorce. *Id.* In fact, the only evidence presented at the CPO hearing consisted of appellee's generalized statement that she was afraid that her safety was in imminent and continued risk. *Id.* at ¶ 19. *Barton* is clearly distinguishable from the case at bar.

{¶ 19} After a thorough review of the evidence presented to the trial court, we find that there was sufficient credible evidence to support the finding that Kyle engaged in domestic violence against Tawni. As an appellate court, we defer to the trial court's determinations of credibility as it had the only opportunity "to view the witnesses and

observe their demeanor, gestures and voice inflections * * *." *Seasons Coal,* 10 Ohio St.3d at 80, 461 N.E.2d 1273. In the instant case, Tawni testified that Kyle arrived at her residence between approximately 9:45 and 10:00 p.m. on the night of December 1, 2014. After a brief argument outside of the residence, Tawni testified that Kyle struck her in the face with his fist twice, breaking her glasses and bruising her face. Contrary to defendant's assertion, Tawni's testimony alone is sufficient to meet the preponderance-of-the-evidence standard. *Felton v. Felton*, 79 Ohio St.3d 34, 44, 679 N.E.2d 672 (1997). Furthermore, Deputy Joseph's testimony regarding his observations of Tawni's appearance and behavior once he arrived at the scene is consistent with her testimony with respect to the incident.

{¶ 20} Although Kyle's testimony contradicted Tawni's testimony, the magistrate, and the trial court too, were free to reject appellant's testimony and accept Tawni's account as credible. Because sufficient evidence supports its judgment, the trial court did not err in adopting the magistrate's decision granting the domestic violence CPO.

{¶ 21} Kyle's sole assignment of error is overruled.

{¶ 22} Kyle's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J. and WELBAUM, J., concur.

Copies mailed to:

Jennifer J. Walters
Brian A. Sommers
Hon. Jonathan P. Hein