[Cite as *Wedlake v. Elswick*, 2021-Ohio-1119.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JESSICA M. WEDLAKE | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28873 |
| | : | |
| v. | : | Trial Court Case No. 2019-DV-1292 |
| | : | |
| ROBERT L. ELSWICK | : | (Appeal from Common Pleas |
| | : | Court – Domestic Relations Division) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of April, 2021.

. . . . . . . . . . .

SARVANI P. NICOLOSI, Atty. Reg. No. 0085621, 130 West Second Street, Suite 700W, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

MARK J. BAMBERGER, Atty. Reg. No. 0082053, P.O. Box 189, Spring Valley, Ohio 45370
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Plaintiff-appellant Jessica M. Wedlake appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which overruled her objections and adopted the decision of the magistrate denying her petition for a domestic violence civil protection order (CPO) against Robert L. Elswick and vacating the previously-granted ex parte CPO. Wedlake filed a timely notice of appeal on August 18, 2020.

{¶ 2} The parties were married but had separated by the time the proceedings in this case were heard by the magistrate and trial court. The parties have two minor daughters together, and Elswick has another daughter from a previous relationship. At the time of the events alleged in Wedlake's original petition for a CPO, the parties were living together with all three children.

{¶ 3} The incident which led to Wedlake's petition for a CPO occurred on the morning of August 15, 2019. Wedlake testified that she was going to take her daughter and stepdaughter to school when she found that her motor vehicle would not start because the vehicle's battery was depleted. Wedlake went back into the apartment she shared with Elswick and woke him up so he could jump-start her vehicle. Based upon previous incidents, she blamed Elswick for the failure of her car to start, and they began arguing. Elswick testified that Wedlake began throwing "fake" punches at him while they argued. Wedlake testified that Elswick yelled at her and then proceeded to jump start her car. Wedlake testified that after he started her car, Elswick kicked off her front license plate. Elswick testified that he did not kick Wedlake's license plate, rather he accidentally knocked it off with his vehicle when pulling up to Wedlake's car to perform the jump-start. In any event, after starting Wedlake's vehicle, Elswick retrieved a

screwdriver and put the license plate back on.  Elswick testified that he used a pair of pliers to replace the license plate, not a screwdriver.

{¶ 4} Wedlake and Elswick went back inside their apartment and continued to argue.  Wedlake testified that she and Elswick went into the bathroom so that the children would not hear them.  Wedlake testified that, once in the bathroom, she argued with Elswick and began gesturing with her hands; at that point, Elswick grabbed her hand and pushed her against the wall.  According to Wedlake, Elswick then tried to punch her and threatened to stab her in the neck with the screwdriver he had used to put the license plate back on her vehicle.  Wedlake testified that, instead of stabbing her, Elswick repeatedly stabbed the wall next to her with the screwdriver.  Wedlake testified that she exited the bathroom and left the apartment with the three children.  Conversely, Elswick denied pushing or attempting to strike Wedlake.  Elswick acknowledged punching the wall and stabbing the wall with a screwdriver, but stated that he did so only *after* Wedlake had exited the bathroom.

{¶ 5} Based upon this encounter, Wedlake filed a pro se petition for a domestic violence CPO on August 19, 2019, and she was awarded an ex parte CPO on the same day.  On October 1, 2019, after retaining counsel, Wedlake filed an amended petition for a domestic violence CPO, in which she further alleged that Elswick had violated the ex parte CPO by committing menacing by stalking.  Wedlake did not seek leave to file an amended petition, and the amended petition did not have a certificate of service.

{¶ 6} A two-day hearing was held before the magistrate on October 15 and December 3, 2019.  During the hearing, counsel for Wedlake elicited a great deal of testimony related to allegations of several CPO violations by Elswick, as alleged in

Wedlake's amended petition. Elswick objected to admission of evidence of violations of the CPO as beyond the scope of the initial petition. While the magistrate allowed Wedlake to testify with respect to Elswick's violations of the ex parte CPO, she based her final decision upon the allegations contained in Wedlake's original petition.

{¶ 7} After hearing arguments from both parties, the magistrate found that service of the amended petition had not been perfected on either Elswick or his counsel. Wedlake orally requested leave to amend the petition, which the magistrate denied. Wedlake then requested a continuance for the purpose of serving Elswick with the amended petition, which the magistrate also denied. Nevertheless, the magistrate did allow Wedlake to present evidence regarding the alleged CPO violations contained in the amended petition, and the evidence suggested that Elswick had violated the CPO several times by attempting to contact Wedlake on her cellphone and sending her numerous text messages. The record establishes that at least two criminal charges were brought against Elswick for violating the ex parte CPO.

{¶ 8} On January 29, 2020, the magistrate issued a decision denying Wedlake's petition for a domestic violence CPO and vacating the ex parte CPO. On February 11, 2020, Wedlake filed her initial objections to the magistrate's decision. After receiving the transcripts of the hearing, Wedlake filed supplemental objections on May 15, 2020. On July 23, 2020, the trial court overruled Wedlake's objections, adopted the magistrate's decision in its entirety, denied the petition and vacated the ex parte CPO.

{¶ 9} It is from this judgment that Wedlake now appeals.

{¶ 10} Because they are interrelated, Wedlake's first and third assignments of

error[1] will be discussed together as follows:

THE INITIAL PETITION ALLEGES A PATTERN OF CONDUCT THAT SUPPORTS ALLOWING THE INTRODUCTION OF TESTIMONY OF INCIDENTS OCCURRING AFTER THE INITIAL FILING OF THE PETITION.

R.C. 3113.31 IS A REMEDIAL STATUTE AND SHOULD BE CONSTRUED TO PREVENT FURTHER ABUSE TO THE PETITIONER AND HER CHILDREN.

{¶ 11} The appropriate standard to be employed by the trial court when reviewing a magistrate's decision on a CPO is set forth in *Quick v. Kwiatkowski*, 2d Dist. Montgomery No. 18620, 2001 WL 871406, *3 (Aug. 3, 2001):

Magistrates are neither constitutional nor statutory courts. Magistrates and their powers are wholly creatures of rules of practice and procedure promulgated by the Supreme Court. Therefore, magistrates do not constitute a judicial tribunal independent of the court that appoints them. Instead, they are adjuncts of their appointing courts, which remain responsible to critically review and verify the work of the magistrates they appoint. * * * Civ.R. 53(E)(4)(b) contemplates a de novo review of any issue of fact or law that a magistrate has determined when an appropriate objection is timely filed. The trial court may not properly defer to the magistrate in the exercise of the trial court's de novo review. The

---

[1] In her brief, Wedlake refers to her assignments of error as "propositions of law." For clarity's sake, we will refer to her "propositions" as assignments of error for the remainder of the opinion.

magistrate is a subordinate officer of the trial court, not an independent officer performing a separate function.

*Id.*

{¶ 12} A trial court's review of a magistrate's decision differs from an appellate court's review of a trial court's decision:

The "abuse of discretion" standard * * * is applicable to the review performed by a superior court of the judgments and orders of inferior courts. Inherent in the abuse of discretion standard are presumptions of validity and correctness, which acknowledge the independence of the inferior courts by deferring to the particular discretion they exercise in rendering their decisions. Because its magistrate does not enjoy that independence, such presumptions are inappropriate to the trial court's review of a magistrate's decisions. Therefore, a trial court errs when it applies the abuse of discretion standard of review in ruling on Civ.R. 53(E)(3) objections to the decision of the appointed magistrates * * *.

*Id.*

{¶ 13} "A protection order, or an order extending a protection order, requires sufficient evidence. By contrast, no evidence is required to support an order overruling a motion for a protective order, or a motion to extend a protection order. In a hypothetical proceeding on a motion to extend a protection order in which no evidence is presented, the trial court would be required to overrule the motion. We conclude, therefore, that in reviewing an order overruling a motion to extend a protection order, the standard of review is not whether there is sufficient evidence to support the order of the trial court overruling

the motion (no quantum of evidence is required for that order), but whether that order is against the manifest weight of the evidence." *Charles v. Peters*, 2d Dist. Greene No. 2015-CA-52, 2016-Ohio-1259, ¶ 10.

{¶ 14} In determining whether the trial court's judgment was against the weight of the evidence, every reasonable inference and presumption must be made in favor of the judgment and the findings of fact. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the [trial court's] * * * judgment * * *." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21.

{¶ 15} Therefore, in reviewing Wedlake's arguments, we must be guided by the presumption that the trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and to use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). We must defer to the factual findings of the trial court regarding the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. We may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

{¶ 16} We have also established that an abuse-of-discretion standard is to be applied upon appellate review of a trial court's decision to adopt, modify, or vacate the order of the trial court's magistrate. *L.L.L. v. Junies*, 2d Dist. Greene No. 2013-CA-31, 2014-Ohio-141, ¶ 12, citing *Proctor v. Proctor*, 48 Ohio App.3d 55, 60-61, 548 N.E.2d 287 (3d Dist.1988). A court abuses its discretion by acting in a manner that is unreasonable,

arbitrary or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996). Decisions are unreasonable if they are not supported by a sound reasoning process. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 17} We have discussed the evidence necessary to meet the requirements of the domestic violence statute for a protection order:

> Under R.C. 3113.31(E)(1), a court may grant a protection order to "bring about a cessation of domestic violence." When a trial court grants a protection order, it must find that the "petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997), at paragraph two of the syllabus. Domestic violence is defined in pertinent part by R.C. 3113.31(A)(1) as "[p]lacing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code".

*Barton v. Barton*, 2d Dist. Greene No.2014-CA-21, 2015-Ohio-3869, ¶ 7.

{¶ 18} Therefore, a petitioner seeking a domestic violence protection order must produce evidence to meet the factors set forth in one of three statutes: R.C. 3113.31(A)(1), R.C. 2903.211, or R.C. 2911.211. Under the first statute, R.C. 3113.31(A)(1), Wedlake had to prove by the preponderance of the evidence that she was placed in fear of imminent serious physical harm as a direct result of the respondent's force or threat of force. R.C. 2901.01(A)(1) defines force as "any violence, compulsion,

or constraint physically exerted by any means upon or against a person or thing." With regard to the imminence of the harm, this court has previously held that, because CPOs are intended to prevent violence before it happens, imminence does not require an offender to carry out a threat immediately or to be in the process of carrying it out. *Young v. Young*, 2d Dist. Greene No. 2005-CA-19, 2006-Ohio-978, ¶ 105. Instead, "the critical inquiry under the statute is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm. This inquiry necessarily involves both subjective and objective elements. * * * Therefore, we must determine whether [the petitioner] * * * had a reasonable belief that * * * [the respondent] would cause her imminent, serious physical harm." *Id.* at ¶ 106.

{¶ 19} R.C. 2901.01(A)(5) defines "serious physical harm to persons" as any of the following: "(a) any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; (b) any physical harm that carries a substantial risk of death; (c) any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; or (e) any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

{¶ 20} In this case, based on the evidence presented, the trial court did not abuse its discretion in concluding that there was insufficient evidence from which to conclude that Elswick had placed Wedlake in fear of imminent serious physical harm, by force or threat of force. As previously stated, Wedlake testified that she and Elswick went into

the bathroom so that the children could not hear them arguing. Wedlake testified that once in the bathroom, she argued with Elswick and began gesturing with her hands. Wedlake testified that Elswick then grabbed her hand and pushed her against the wall. According to Wedlake, Elswick then tried to punch her and threatened to stab her in the neck with a screwdriver. Wedlake testified that instead of stabbing her, Elswick repeatedly stabbed the wall next to her with the screwdriver. Wedlake testified that she left the bathroom and left the apartment with the children.

{¶ 21} Conversely, Elswick denied pushing Wedlake, attempting to strike her, or threatening her with the screwdriver. Elswick acknowledged punching the wall and stabbing the wall with a screwdriver, but stated that he did so only after Wedlake had exited the bathroom, because he was frustrated and upset. Elswick testified to taking suboxone for a previous opioid addiction and to having random drug tests three to four times a month; he denied using marijuana or other drugs. Elswick also testified that he had no history of violent behavior toward anyone, including Wedlake. Elswick acknowledged that he had violated the ex parte CPO by cellphone contact, but stated that he did so because he wanted to know that his kids were safe. Elswick admitted sending a nude photograph of Wedlake to her because he was upset, but he denied saying that he would post it on social media, as Wedlake claimed. Elswick testified that he only wanted to see his children.

{¶ 22} In her decision denying the petition for a domestic violence CPO and vacating the ex parte CPO, the magistrate specifically found Elswick's testimony to be more credible than that offered by Wedlake, and the trial court accepted the magistrate's judgment on this issue. Upon review of the record and transcripts, we find that the trial

court did not abuse its discretion in concluding that Wedlake did not present sufficient, credible evidence to meet the statutory factors required under R.C. 3113.31(A)(1).

{¶ 23} Wedlake's first and third assignments of error are overruled.

{¶ 24} Because they are interrelated, Wedlake's second, fourth, fifth, and sixth assignments of error will be discussed together:

THE LOWER COURT ABUSED ITS DISCRETION IN DENYING PETITIONER-APELLANT LEAVE TO FILE HIS AMENDED PETITION.

THE LOWER COURT'S DECISION IS INCONSISTENT WITH OHIO CIVIL RULE'S PURPOSE OF ALLOWING CASES TO BE HEARD ON THE MERITS THROUGH A LIBERAL AMENDMENT POLICY.

RESPONDENT'S FAILURE TO OBJECT TO THE AMENDED PETITION ON DAY 1 OF TRIAL CONSTITUTES IMPLIED CONSENT TO AMENDMENTS.

OBJECTIONS TO AMENDMENTS.

{¶ 25} In her second, fourth, fifth, and sixth assignments, Wedlake essentially argues that the trial court erred when it found that the magistrate had properly denied her motion to amend her original petition to include pleadings related to Elswick's repeated violations of the ex parte CPO after the initial petition was filed. Wedlake had stated the following as her basis for amending the petition:

After the Ex Parte CPO was issued, a continuance was filed. I put my phone number on the order as indicated by the form continuance [sic] without knowing that [Elswick] would be able to see it. He then came to know my phone number and has since sent me hundreds of upsetting text

messages and sent me photos of naked pictures of myself that I didn't even know he had.

He has also used apps to generate new numbers and sent me videos of himself. He had also left me voicemails.

This has been incredibly upsetting for me and I am unable to escape his constant harassment. I can't even block his number since he is constantly coming up with new numbers.

I restate all allegations made in my initial petition.

{¶ 26} A trial court's determination whether to grant a motion for leave to amend a complaint will not be reversed on appeal absent an abuse of discretion. *Darulis v. Ayers*, 5th Dist. Stark No.1996CA00398, 1999 WL 669240 (Feb. 2, 1999), citing *Cselpes v. Cleveland Catholic-Diocese*, 109 Ohio App.3d 533, 541, 672 N.E.2d 724 (8th Dist.1996). In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 27} Civ.R. 15(A) reads as follows:

A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. A party shall plead in

response to an amended pleading within the time remaining for response to the original pleading or within fourteen days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

{¶ 28} The Ohio Supreme Court has held that "it is an abuse of discretion for a court to deny a motion, timely filed, * * *, where it is possible that plaintiff may state a claim upon which relief may be granted and no reason otherwise justifying denial of the motion is disclosed." *Peterson v. Teodosio*, 34 Ohio St.2d 161, 297 N.E.2d 113 (1973), paragraph six of the syllabus.

{¶ 29} Wedlake argues that the trial court should have ordered the magistrate to admit the testimony regarding Elswick's multiple violations of the CPO, as that evidence provided an additional basis for the CPO, namely, menacing by stalking. Wedlake contends that, although the original petition did not allege menacing by stalking, the trial court erred in not allowing the evidence of Elswick's ex parte CPO violations as a basis for granting the CPO, because Elswick did not object to the testimony on the first day of the hearing, and therefore impliedly consented to the amendment of the original petition.

{¶ 30} Civ.R. 15(B) also allows pleadings to be constructively amended to conform to evidence. That rule provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after

judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

{¶ 31} "Civ.R 15(B) is consistent with the general principle that cases should be decided on the issues actually litigated at trial." *Baxter v. ABS Constr. Supply Co.*, 2d Dist. Darke No. 1344, 1994 WL 731475, *5 (Dec. 28, 1994), citing *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 44, 448 N.E.2d 1159 (1983).

{¶ 32} Civ.R. 15(B) allows an amendment to a pleading to be made at any time, even after judgment, and the rule is to be liberally construed in an effort to decide cases on their merits. *Hall v. Bunn,* 11 Ohio St.3d 118, 121, 464 N.E.2d 516 (1984). Moreover, Civ.R. 54(C) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings."

{¶ 33} An amendment under Civ.R. 15(B) must be made by motion. *Vanderhorst v. 6105 N. Dixie Drive, L.L.C.*, 2d Dist. Montgomery No. 23491, 2009-Ohio-6687, ¶ 16. However, under certain circumstances, such a motion may be inferred from the arguments of the parties and the ruling of the trial court, even though Civ.R. 15(B) was

not expressly identified. *See Baltes Commercial Realty v. Harrison,* 2d Dist. Montgomery No. 23177, 2009-Ohio-5868, ¶ 48.

{¶ 34} The Supreme Court of Ohio held in *Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 448 N.E.2d 1159, that, under Civ.R. 15(B), "implied consent is not established merely because evidence bearing directly on an unpleaded issue is introduced without objection; it must appear that the parties understood the evidence was aimed at the unpleaded issue." *Id.* at paragraph two of syllabus. In addition, an issue may not be tried by implied consent where it results in substantial prejudice to a party. *Id.* at 45. "Various factors to be considered in determining whether the parties impliedly consented to litigate an issue include: whether they recognized that an unpleaded issue entered the case * * *; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be retried on a different theory * * *; and whether the witnesses were subjected to extensive cross examination on the issue * * *." *Id.* at 45-46. Accordingly, Elswick's failure to object on the first day of the hearing before the magistrate does not require us to find that he impliedly consented to the amendment of the original petition to include a claim for menacing by stalking.

{¶ 35} As previously stated, the record establishes that neither Elswick nor his counsel was served with a copy of the amended petition prior to the hearing. On the second day of the hearing before the magistrate, the following exchange occurred between the parties after Wedlake's counsel attempted to elicit testimony regarding the alleged CPO violations contained in the amended petition:

COUNSEL FOR ELSWICK: I'm going to object to this line of questioning.

It does not pertain to the date in question for which the protection order has

been filed.

TRIAL COURT*:* I would agree with that.

COUNSEL FOR WEDLAKE: Your Honor, on October 1, [2019], we amended the petition to add in –

TRIAL COURT: And when did you serve it on him? Did you serve him personally?

COUNSEL FOR WEDLAKE: With the amended petition?

TRIAL COURT*:* Mm-hmm. Did you get leave of the Court to amend it?

COUNSEL FOR WEDLAKE: No, I did not.

TRIAL COURT: Okay. Did you file a motion for a contempt for violating the protection order?

COUNSEL FOR WEDLAKE: No. He's facing a couple of criminal charges.

TRIAL COURT: Okay. Well, then I guess I'll deal with that. Okay.

COUNSEL FOR WEDLAKE: Your Honor –

TRIAL COURT: I'll allow the questioning. I'll give it the weight it's worth. Go ahead.

COUNSEL FOR WEDLAKE: Okay. I guess I would like to orally request leave of court to amend the petition in the event I have to do it at a later time.

TRIAL COURT: Just because of the picture being sent?

COUNSEL FOR WEDLAKE: In fact, Your Honor, there's many, many text messages that have been sent.

TRIAL COURT: They're violations of the protection order. How are they –

COUNSEL FOR WEDLAKE: Related?

TRIAL COURT: Why are they related to the original allegations?

COUNSEL FOR WEDLAKE: Okay. Your Honor, the text messages of which there are many from many different numbers constitute a pattern of conduct that create a significant amount of mental distress for my client; and, therefore, would entitle my client to a protection order under the menacing by stalking portion of the statute.

TRIAL COURT: They're married. Okay. There's a protection order that's been violated. And if we don't prove the basis of the original complaint, then you're basically saying this is substantial enough to grant a protection order?

COUNSEL FOR WEDLAKE: Yes, Your Honor.

COUNSEL FOR ELSWICK: And if –

TRIAL COURT: Have you been served with the amended order?

COUNSEL FOR ELSWICK: I have not, Your Honor. And I would say that we are here begging the Court's time on the original filing.

TRIAL COURT: I agree with that. I'm not going to allow the amendment. Go ahead. You can file objections. I'm looking at your petition because I don't have the amended petition.

COUNSEL FOR WEDLAKE: You don't have the amended petition?

TRIAL COURT: Yeah. And there's no service on it. It's been filed. It was filed on October 1, 2019. I'm hearing the original petition, so go ahead.

COUNSEL FOR WEDLAKE: Your Honor, I would request a continuance or

leave of court at this time to provide it.

TRIAL COURT: Overruled.   Move on.

COUNSEL FOR WEDLAKE: I certainly mail – I mailed the amended petition to the Respondent on October 1.

TRIAL COURT: Sir, do you have it?

ELSWICK: I don't have a copy of it, Your Honor.

TRIAL COURT: Okay.

ELSWICK: They mentioned some of this stuff in court last time.   That was it.   That's all I know.

COUNSEL FOR WEDLAKE: We did mention it in court, yes.

TRIAL COURT: Mr. Bamberger, did you get a copy of it?

COUNSEL FOR ELSWICK: I did not.   And I may – I may not have been –

TRIAL COURT: Retained at that time?

COUNSEL FOR WEDLAKE: He was not.

COUNSEL FOR ELSWICK: So to be fair, I might have not been in the loop at that point.

TRIAL COURT: Mr. Elswick, you're indicating you didn't get it?

ELSWICK: I don't recall seeing it, no.

TRIAL COURT: Okay.   Where was it sent?

COUNSEL FOR WEDLAKE: [names a residential address in Kettering, Ohio].

TRIAL COURT: Is that your address, sir?

ELSWICK: It is, but I've been staying back and forth between there and my

parents' house. [Wedlake] still has the key to the house, but I don't – I don't know.

COUNSEL FOR WEDLAKE: I don't understand the relevance.

TRIAL COURT: Okay. I'm going to hear the original one. Okay. I'm going to hear what was filed back on August 19, 2019. That's what I'm hearing.

COUNSEL FOR WEDLAKE: Okay. And the Court would consider the violations of the protection order for purposes of assessing the dangerousness of the case?

TRIAL COURT: Yes.

December 3, 2019, Hearing Tr. p. 58-63.

**{¶ 36}** In light of the above excerpt from the transcript, it is apparent that neither Elswick nor his counsel had notice that Wedlake was alleging menacing by stalking as an alternate basis for the CPO because they were not served with the amended petition. The only notice Elswick had was of the events which occurred on August 15, 2019, as described in the original petition filed on August 19, 2019. Without proper notice of Wedlake's intent to pursue an additional claim of menacing by stalking as a basis for a CPO, Elswick would have been substantially prejudiced at the hearing. Furthermore, we agree with the trial court that the allegations in the amended petition regarding multiple violations committed by Elswick should have been filed as a request for a finding of contempt of the ex parte CPO. The trial court did not err when it found that the magistrate properly denied Wedlake's motion to amend her original petition to include pleadings related to Elswick's repeated violations of the ex parte CPO after the initial petition was

filed.

**{¶ 37}** Wedlake's second, fourth, fifth, and sixth assignments of error are overruled.

**{¶ 38}** All of Wedlake's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


HALL, J. and WELBAUM, J., concur.


Copies sent to:

Sarvani P. Nicolosi
Mark J. Bamberger
Hon. Timothy D. Wood