[Cite as *Barton v. Barton*, 2017-Ohio-980.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| DOUGLAS C. BARTON | : | |
| | : | |
| *Plaintiff-Appellant* | : | Appellate Case No. 2016-CA-12 |
| | : | |
| v. | : | Trial Court Case Nos. 2013-DR-207, |
| | : | 2013-DV-193, and 2013-DV-196 |
| KEESHA BARTON, nka EVANS | : | |
| | : | (Appeal from Domestic Relations |
| *Defendant-Appellee* | : | Court) |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 17th day of March, 2017.

. . . . . . . . . .

DOUGLAS C. BARTON, 437 Warwick Place, Fairborn, Ohio 45324
    Plaintiff-Appellant-Pro Se

ANDREW JOHNSTON, Atty. Reg. No. 0088008, 215 West Water Street, P.O. Box 310,
Troy, Ohio 45373
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} This case involves the most recent of several appeals involving the divorce of Douglas Barton and Keesha Barton, nka Evans, as well as civil protection orders ("CPOs") issued in connection with domestic violence cases that the parties filed against each other.[1]  Douglas is currently appealing, pro se, from a trial court decision that held him in contempt for failing to pay attorney fees and that issued a withholding order for spousal support that he failed to pay.  In addition, the trial court dismissed the CPO that Douglas had obtained against Keesha.

{¶ 2} In support of his appeal, Douglas has presented twelve assignments of error. Because the assignments of error are without merit, the judgment of the trial court will be affirmed.

## I.  Facts and Course of Proceedings

{¶ 3} In August 2013, Douglas Barton filed a divorce complaint against his wife, Keesha.  They had only been married since July 2012, and had a tumultuous relationship.  This case was labeled as Greene County Domestic Relations Case No. 2013-DR-207.[2]

{¶ 4} On November 27, 2013, Keesha filed a petition for a domestic violence protection order, alleging that Douglas had committed various acts of violence against her.  This case was labeled as Greene County Domestic Relations Case No. 2013-DV-193.  An ex parte order was entered, and after a hearing in April 2014, a CPO was issued

---

[1] For purposes of convenience, we will refer to the parties by their first names.
[2] Unless otherwise indicated, the docket references in this opinion refer to the docket entries in Case No. 2013-DR-207.

on April 30, 2014, precluding Douglas from having any contact with Keesha, requiring him to stay at least 500 feet away from her, and so on. The order was set to expire on April 14, 2019. Douglas appealed from the CPO, and we reversed the order on September 23, 2015. We concluded that "the evidence regarding the contact between the parties in 2013 does not constitute sufficient, credible evidence to support a finding that Ms. Barton was placed, by force or threat of force, in fear of imminent serious physical harm." *Barton v. Barton*, 2d Dist. Greene No. 2014-CA-21, 2015-Ohio-3869, ¶ 20 (*Barton I*).

{¶ 5} On December 2, 2013, Douglas filed a petition for a domestic violence protection order, alleging that Keesha had committed various acts of violence against him. The case was labeled as Greene County Domestic Relations Case No. 2013-DV-196. An ex parte order was entered, and after a hearing in April 2014, a CPO was issued on April 30, 2014, precluding Keesha from having any contact with Douglas, requiring her to stay at least 500 feet away from him, and so on. The order was set to expire on April 14, 2019. Keesha did not appeal from the order. She had also pled guilty to disorderly conduct in 2013, a charge that was reduced from domestic violence. According to Douglas, he agreed to reduce the charge so as not to interfere with her military career, and on the basis that the property in the divorce would be split fairly – an outcome that he claims did not occur.

{¶ 6} Amidst the domestic violence proceedings, the parties' divorce proceeded to final disposition on September 12, 2014. Previously in February 2014, Judge Hurley had transferred all three cases to Judge Campbell, a retired judge sitting by assignment, to hear all issues concerning domestic violence and divorce. One issue in the divorce case was a prenuptial agreement that the parties had allegedly signed. Judge Campbell

decided not to credit the agreement because the list of property included in the prenuptial agreement was missing. This has been a bone of contention with Douglas throughout the case, because Douglas claimed there were three copies of the agreement. According to Douglas, two copies were located at the marital residence, which was Keesha's home, and Douglas did not re-enter the house after leaving the day that Keesha was arrested for domestic violence. Thus, he had no copy of the agreement. He alleged that when he was able to obtain a copy of it, the property list that had originally been attached was missing.

{¶ 7} Douglas claimed that Keesha had removed the property list to prevent enforcement of the prenuptial agreement. He further claimed that the attorney who drew up the agreement had the third copy, but would not release it to him.

{¶ 8} In the divorce decree, Judge Campbell divided the parties' property based on what he thought was equitable. He refused to grant either party an interest in the other's retirement or pension funds since the bulk of these funds had been accrued prior to their brief marriage. (At the time, Douglas had approximately $143,000 in retirement funds). Each party also retained the house he or she had owned prior to marriage.

{¶ 9} In addition, Judge Campbell awarded Keesha $500 per month in spousal support, for 12 months, with the first payment being due 30 days after the filing of the divorce decree. The support was to be paid to Keesha's attorney to avoid violating the CPOs. In the decree, the court noted that this award was based on the parties' income disparity and the fact that Douglas had not paid for marital expenses during the marriage. At the time, Douglas made $82,000 yearly from employment and $7,700 yearly from USAF Reserves. Keesha was a member of the military and made about $63,000 per

year, including housing and other allowances.   The trial court indicated in the decree that it was not reserving continuing jurisdiction over spousal support.

{¶ 10} The trial court also ordered Douglas to pay $4,500 in attorney fees, which was significantly less than the amount Keesha had requested (over $22,000).   The court found blame on each party's part, but concluded that some of the fees were caused by a contempt motion Keesha was required to bring against Douglas.

{¶ 11} Douglas filed an appeal from the divorce decree, but we dismissed his appeal on March 31, 2015, because he failed to file a proper appellate brief.   We had previously notified Douglas that his brief exceeded our page limit.   We struck the brief and allowed him to refile the brief in a proper format.   However, Douglas refused to refile his brief, contending that 35 pages was insufficient to present his case.   *See Barton v. Barton*, 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264, ¶ 4 and fn.1 (*Barton II*).   On July 8, 2015, the Supreme Court of Ohio refused to accept jurisdiction of Douglas's appeal of the dismissal.   *See Barton v. Barton*, 143 Ohio St.3d 1406, 2015-Ohio-2747, 34 N.E.3d 133 (Table) (not accepting appeal for review).

{¶ 12} In the meantime, Keesha had filed a motion on May 29, 2015, in 2013-DV-196, asking the court to dismiss the CPO that had been filed against her.   A hearing eventually occurred concerning that matter on March 7, 2016.

{¶ 13} On August 11, 2015, Keesha filed a motion to show cause and for contempt in Case No. 2013-DR-207.   This motion was based on Douglas's failure to pay the $4,500 in attorney fees that had been awarded to Keesha in the divorce decree.   Keesha also asked for attorney fees in connection with this motion.   A hearing on the motion was set for October 15, 2015, before Judge Hurley.

{¶ 14} Keesha filed another motion in Case No. 2013-DR-207 on August 11, 2015, asking the court to issue a withholding order directed to Douglas's employers. This was based on Douglas's failure to pay any spousal support payments. Again, Keesha asked for attorney fees in connection with the filing of the motion. The hearing on this motion was also set for October 15, 2015, before Judge Hurley.

{¶ 15} On August 13, 2015, on his own motion, Judge Hurley filed a restraining order preventing Douglas from contacting Judge Campbell. Previously, on August 11, 2015, Douglas had filed an affidavit of disqualification with the Supreme Court of Ohio, asking that Judges Hurley and Campbell be disqualified from presiding on his cases. The Supreme Court denied this affidavit on August 17, 2015, and also denied Douglas's motion for reconsideration on September 18, 2015.

{¶ 16} On August 18, 2015, Judge Campbell filed an order recusing himself from any further participation in the three cases involving Douglas Barton. Douglas then filed a notice of appeal on September 10, 2015, from the restraining order that Judge Hurley had imposed. On the same day, Douglas filed a "Demand for Determination of Void Judgment, Demand for Jury Trial, and Other Motion(s)." We later characterized this as a motion for relief from judgment. *See Barton II*, 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264, ¶ 7. Judge Hurley overruled the motion for relief from judgment on September 15, 2015, and on October 13, 2015, Douglas filed a notice of amended appeal, asking that this order be included in the appeal involving the restraining order. We granted his request. *Barton II* at ¶ 9.

{¶ 17} We issued our decision in *Barton I* on September 23, 2015, and concluded that the trial court had erred in granting the CPO against Douglas. *Barton I*, 2d Dist.

Greene No. 2014-CA-21, 2015-Ohio-3869, ¶ 20. Based on that finding, we rejected Douglas's remaining twelve assignments of error as moot. *Id.* at ¶ 21-22.

{¶ 18} On October 15, 2015, Keesha filed a motion to compel Douglas to provide discovery and also asked for sanctions, including attorney fees for filing the motion. The same day, Judge Hurley filed an order requiring Douglas to provide discovery within seven days. The court also stated that the issue of attorney fees would be considered at the final hearing.

{¶ 19} Subsequently, Keesha's attorney, Charles Slicer, was allowed to withdraw as counsel for Keesha, based on threats that Douglas had allegedly made on Slicer's life. The hearing set for October 15, 2015, was also continued to December 9, 2015. Attorney Andrew Johnston then filed a notice of appearance on Keesha's behalf on November 9, 2015.

{¶ 20} Judge Stucki, a retired family court judge, was now sitting by assignment on the cases. Judge Stucki filed an entry on December 11, 2015, indicating that a hearing had been held with the parties present, that Douglas had been advised of his rights in the contempt proceeding, and that the court had addressed Douglas about the advisability of obtaining counsel. The judge further noted that he would also consider Keesha's motion to dismiss the CPO at the evidentiary hearing, which was set for March 7, 2016.

{¶ 21} An evidentiary hearing was held as scheduled on March 7, 2016, and three witnesses testified during the hearing: Keesha, Douglas, and Mark Donatelli, a Greene County attorney. Douglas appeared pro se and was given an opportunity to cross-examine the witnesses and present his case.

{¶ 22} At the beginning of the hearing, Douglas objected to hearing the motion for contempt, the motion for a withholding order, and the motion to dismiss the CPO because Douglas's motion for relief from judgment was currently pending in the court of appeals. Douglas, therefore, argued that the trial court did not have jurisdiction to proceed with these matters. He did agree that issues pertaining to the motion to compel were currently properly before the trial court.

{¶ 23} The trial court acknowledged that an appeal from denial of the motion for relief from judgment was pending in the court of appeals. However, the trial court also noted that the court of appeals had denied Barton's motion for a stay on October 13, 2015.[3] On this basis, the trial court decided to proceed with the hearing.

{¶ 24} At the hearing, Douglas acknowledged that he had never paid any of the spousal support or attorney fees ordered in the divorce decree, and that the payments were overdue under the terms listed in the decree. Nonetheless, Douglas emphatically stated that he never planned to pay Keesha any money for attorney fees or anything else. He stressed that payment would be over his "dead body." Transcript of March 7, 2016 Proceedings, p. 57. He further stated that if the trial court ordered him to pay the $500 in spousal support per month for 12 months (which in fact, had already been ordered), he would not comply with the order.

{¶ 25} Douglas also admitted that he had received the request for discovery, that he had been ordered to comply with the discovery request on October 15, 2015, and that

---

[3] This is correct. On October 13, 2015, we overruled Douglas's appellate motion for a stay or injunction, based on the fact that we could not determine what actions he was asking to have stayed. *See Barton v. Barton,* 2d Dist. Greene No. 2015-CA-53, p. 1 (Oct. 13, 2015). Douglas did not, thereafter, make any further attempt to obtain a stay from our court of the trial court proceedings.

he had taken no action thereafter. Later in his comments to the court, he indicated that he had provided his former counsel with information pertaining to a lien on a 2005 K2 Toy Hauler RV, and that he had seen his attorney hand the information to Mr. Slicer (Keesha's former counsel). Consistent with his position about issues and rulings in the trial court, Douglas claimed that Slicer had later fraudulently filed the motion to compel discovery, in an attempt to make Douglas look bad with the court.

{¶ 26} At the March 7, 2016 hearing, the parties' stories differed with respect to the CPO that had been entered against Keesha. Douglas claimed that Keesha had violated the CPO after it was issued, and that he had filed police reports about the alleged violations. However, he presented no witnesses and no police reports to document this, and the police took no action on his alleged complaints of violations. Douglas stated that he was in fear of Keesha based on his knowledge of her behavior and her repeated stalking of him. He claimed there was an imminent threat to his safety, and without further elaboration, stated that Keesha was very dangerous.

{¶ 27} Keesha also testified, and denied having any contact with Douglas since the CPO was issued, other than during court appearances. She verified that he had not paid her any spousal support or the $4,500 in attorney fees, and indicated that her prior attorney had filed the pending motions at her request. She stated the only contact she had with any family member of Douglas was with his daughter, who had contacted her in July 2014 through Facebook, ranting and raving about Keesha having a mental disorder and harming Douglas's family. Keesha asked the daughter not to contact her again.

{¶ 28} Keesha acknowledged knowing that Douglas had filed a police report about her having allegedly violated the CPO. She stated that she knew this because her

commander had received an email about it. However, she stressed that she had never been contacted by the police, and she denied that any such interaction had taken place. She also said that she had been told in October that either Douglas or his daughter had filed a DODIG complaint against her, but to her knowledge, that had been closed and nothing ever came of it. She denied taking steps to harass Douglas or his daughter at any time.

{¶ 29} According to Keesha, she had never violated the CPO, no proceedings had ever been brought against her for violation of the CPO, and no other CPOs or restraining orders had ever been filed against her. She further stated that she had no skills in weaponry or combat, and that there was no need for a CPO. In addition, she indicated that Douglas's filing of the CPO and multiple filings in court had caused problems with her career, that his "lie and smear" campaign had effectively ruined her career, and that she was being forced to retire as a result. Douglas declined to cross-examine Keesha.

{¶ 30} Attorney Donatelli testified that Slicer's bill of $2,757.50 for pursing the post-decree motions was reasonable and fair and within the range for the legal community in Greene County, Ohio. His testimony was the same for the legal fees of Andrew Johnston, which were $652.50.

{¶ 31} After Keesha rested, Douglas testified. His testimony was a recounting of the ways in which Judge Campbell and Slicer had committed fraud, complaints about the fact that Judge Campbell had improperly awarded Keesha property in the divorce that Douglas had before their marriage, and allegations that fraud had been committed in connection with the prenuptial agreement.

{¶ 32} At the end of the hearing, the trial court stated that it would prepare a journal

entry but would also put its findings on the record so that he could review the findings with the parties. The court granted the motion to dismiss the CPO, based on the lack of an ongoing threat and the fact that it was hampering Keesha's military career. The court then directed Keesha's attorney to prepare that order. In addition, the court stated that Judge Hurley had previously determined the discovery issue and that Judge Hurley's order was the order in the case. The court declined to issue a further order, and stated that the sanctions issue had already been decided.

{¶ 33} Further, the trial court granted the August 11, 2015 motion for a withholding order, and directed Keesha's attorney to also prepare that order. Regarding the contempt motion, the court stressed that it had heard Douglas state that he would not follow the court's orders and had heard Douglas's acknowledgment that he had not paid anything toward the $4,500 in attorney fees. The court, therefore, found Douglas in contempt of court, found that this was Douglas's first offense, and proceeded to sentencing. Douglas was also ordered to forthwith pay the attorney fees incurred in prosecuting the motions, which amounted to a total of $3,410 ($2,757.50 plus $652.50).

{¶ 34} Douglas was sentenced to 30 days in the Greene County Jail, plus a fine of $250 and court costs. The court stated that Douglas would be released from jail on April 5, 2016. When the court said it would give Douglas an opportunity to purge the contempt, Douglas did not respond positively. Transcript of March 7, 2016 Proceedings, p. 166. The court then told Douglas that if he subsequently showed the court that he could substantially comply with its orders, the court would commute the sentence immediately. Douglas was then taken to the Greene County Jail.

{¶ 35} The court filed a commitment order on March 7, 2016, and then filed a

judgment entry and finding of contempt on March 8, 2016, reflecting the same conditions that had been set forth at the hearing. The court included a Civ.R. 54(B) certification on the judgment entry.

**{¶ 36}** On March 16, 2016, the trial court filed a nunc pro tunc order clarifying the March 8, 2016 order. The court changed the caption from Montgomery County to Greene County, and ordered Keesha's attorney to file an order regarding the dismissal of the CPO; otherwise, the nunc pro tunc order was essentially the same as the prior order.

**{¶ 37}** The court also filed another entry on March 16, 2016, discharging Douglas from jail. The court observed that it had been notified that Douglas had made a substantial effort to comply with court orders by giving Andrew Johnston's office $11,500 by certified check. This amount was credited toward the $14,405.40 ordered, and to purge the contempt as follows: $6,000 would be paid toward the spousal support award; $4,500 would be paid on the attorney fees awarded in the final divorce decree; and $652 50 would be paid to Johnston for his work on the current action. Other court costs and fees were to be paid with the rest of the money, leaving an outstanding balance of $2,905.40.

**{¶ 38}** Of that latter amount, $147.90 would still be owed on the $250 fine and the remaining $2,757 of attorney fees was to be paid through Johnston to reimburse Keesha for outstanding fees owed to Charles Slicer for his work in the present action. The court noted that these fees would not have been incurred had Douglas followed court orders. In addition, the court released Douglas from jail and credited him with nine days toward the 30-day sentence. The remaining 21 days were suspended pending Douglas's compliance with court orders and his appearance at a review hearing on August 17, 2016.

{¶ 39} Douglas filed a notice of appeal on March 18, 2016 from the March 7, 2016 "judgment entry."  Doc. #158.  He also filed a request for a transcript.  A judgment entry terminating the CPO was filed in the trial court on March 24, 2016, but no appeal was taken from this order.

{¶ 40} Subsequently, on March 25, 2016, a Judgment Entry/Order of Withholding was filed, withholding spousal support payments through the CSEA, and issuing a withholding order to Douglas's employer, DFAS Cleveland, Legal Garnishment Office, Cleveland, Ohio.   This order was signed by Andrew Johnston and the trial judge.

{¶ 41} On May 27, 2016, we granted a motion that Douglas had filed, asking that he be allowed to amend the notice of appeal to include the March 25, 2016 withholding order that was filed (and was terminated on April 28, 2016.)   Because the March 25, 2016 order had not been sent to the parties, we concluded that the time for filing a notice of appeal as to that order had not begun to run.   As a result, we allowed the filing of an amended notice of appeal.   We did not include the April 28, 2016 order, because it did not appear to be a final appealable order.   *Barton v. Barton nka Evans,* 2d Dist. Greene No. 2016-CA-12 (May 27, 2016).

{¶ 42} Douglas then filed an amended notice of appeal which still incorrectly designated the judgment entry from which he was appealing as the March 7 commitment to the sheriff.   This was so, even though we had pointed out that the correct entry was the one that had been filed March 8, 2016, and had directed him to designate the March 8, 2016 judgment entry in the amended notice of appeal.   However, we allowed this to be construed as an appeal of the March 8, 2016 entry, the March 16, 2016 nunc pro tunc entry, and the April 25, 2016 withholding order.   *Barton v. Barton nka Evans*, 2d Dist.

Greene No. 2016-CA-12, p. 2 (July 1, 2016).

**{¶ 43}** On August 5, 2016, we filed an opinion affirming the denial of Douglas's motion for relief from judgment. *Barton II*, 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264, ¶ 13-29. We also rejected Douglas's claim that he had been entitled to a jury trial, and found that we lacked jurisdiction to address his claims of judicial misconduct. *Id*. at ¶ 30-31. However, we did find that Judge Hurley had erred in entering the restraining order against Douglas because the order was not issued through any procedures provided by Ohio law. *Id.* at ¶ 12. We found no prejudice, because Douglas was not permitted, in any event, to engage in ex parte contact with Judge Campbell. *Id.* We did vacate the restraining order because it was overly broad. *Id.*

**{¶ 44}** Douglas filed his appellate brief on September 2, 2016. Keesha did not file a brief. This matter, therefore, is ready for resolution.

## II. Jurisdictional Issues

**{¶ 45}** Before addressing Douglas's assignments of error, we will first consider the issue of our jurisdiction to hear this case. We are allowed to raise subject matter jurisdiction issues on our own motion. (Citations omitted.) *Nemcic v. Phelps*, 2014-Ohio-3952, 19 N.E.3d 554, ¶ 14 (2d Dist.).

**{¶ 46}** On March 7, 2016, the trial court filed a commitment order directing the sheriff to receive Douglas into custody. The court then filed a "Judgment Entry and Finding of Contempt" on March 8, 2016. This entry addressed five matters: (1) the contempt motion; (2) the motion for a withholding order; (3) the motion to dismiss the CPO against Keesha; (4) sanctions pertaining to the motion to compel discovery; and (5)

attorney fees associated with the motions Keesha filed. The court granted all the motions and declined to change the prior decision that had been made on the motion to compel discovery. After sentencing Douglas for the contempt, the court awarded attorney fees, and directed Keesha'a counsel to prepare a withholding order for the spousal support. The court also inserted a Civ.R. 54(B) certification.

{¶ 47} In the nunc pro tunc entry filed on March 16, 2016, the court also directed Keesha's counsel to prepare "any necessary modification/dismissal of the protection order." Nunc Pro Tunc Entry Correcting the March 8, 2016 Judgment Entry, Doc. #155, p. 2. On March 24, 2016, the trial court also filed an order terminating the CPO. See Judgment Entry on Motion to Modify or Terminate Domestic Violence Civil Protection Order or Consent Agreement, Case No. 2013-DV-196, Doc. #89. As was noted, Douglas did not appeal from this order.

{¶ 48} The issue, therefore, is whether the March 8 judgment and the March 16, 2016 nunc pro tunc order were final appealable orders with respect to the CPO that would provide jurisdiction over issues pertaining to the CPO.

{¶ 49} " 'When determining whether a judgment or order is final and appealable, an appellate court engages in a two-step analysis. First, the court must [ordinarily] determine if the order is final within the requirements of R.C. 2505.02. Second, if the order satisfies R.C. 2505.02, the court must determine whether Civ.R. 54(B) applies and, if so, whether the order contains a certification that there is no just reason for delay.' " *LaMusga v. Summit Square Rehab, L.L.C.*, 2015-Ohio-5305, 43 N.E.3d 504, ¶ 18 (2d Dist.), quoting *Hope Academy Broadway Campus v. White Hat Mgt., L.L.C.*, 2013-Ohio-5036, 4 N.E.3d 1087, ¶ 7 (10th Dist.). (Other citation omitted.)

{¶ 50} We have already decided that the March 8, 2016 contempt order was a final appealable order. *Barton v. Barton nka Evans*, 2d Dist. Greene No. 2016-CA-12, p. 1 (May 27, 2016), citing *Docks Venture, L.L.C. v. Dashing Pacific Group, Ltd.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22 N.E.3d 1035, ¶ 23. However, the judgments of March 8 and 16, 2016, insofar as they pertained to dismissal of the CPO, were not final, because these orders left pending matters yet to be done – the preparation and filing of the final order terminating the CPO.

{¶ 51} The judgment entry of March 8, 2016 sustained and granted the motion to dismiss the CPO, and the nunc pro tunc judgment entry of March 16, 2016 repeated that finding, with the addition that Keesha's attorney should "prepare any necessary modification/dismissal of the protection order." Nunc Pro Tunc Entry Correcting the March 16, 2016 Judgment Entry, Doc. #155, p. 2. This was consistent with the comments the trial court made during the March 7, 2016 hearing.

{¶ 52} "Final orders are those that dispose of the whole case or some separate and distinct subdivision of it while leaving nothing for future determination." (Citation omitted.) *Carpenter v. Carpenter*, 12th Dist. Butler No. CA2013–05–083, 2013-Ohio-4980, ¶ 8. The Supreme Court of Ohio has held that where a court files entries instructing preparation of a final judgment entry, the prior entries are not final orders. *St. Vincent Charity Hosp. v. Mintz*, 33 Ohio St.3d 121, 123, 515 N.E.2d 917 (1987). In this regard, the Supreme Court of Ohio observed that:

> Although labeled judgment entries, the court's March 1, 1985 entry, and the
> July 29, 1985 entry which replaced it, were both announcements of the
> court's decision and concluded with an order that a (final) judgment entry

should be prepared. The judgment entry filed September 10, 1985, was the judgment contemplated by the earlier entries, and it set the time for appeal under App.R. 4(A). We base this conclusion on two grounds. First, the label or title placed on a document is not by itself determinative that the document is, in fact, a judgment entry. *Peters v. Arbaugh* (1976), 50 Ohio App.2d 30, 4 O.O.3d 17, 361 N.E.2d 531. Here, all the pertinent documents were labeled judgment entries. Second, by changing the content of the September 10, 1985 entry from the discursive format of the earlier entries to a concise statement of findings, concluding in an unequivocal order, the trial court clearly evinced the intent that this was the announcement of its judgment in the case. *See Millies v. Millies* (1976), 47 Ohio St.2d 43, 1 O.O.3d 26, 350 N.E.2d 675. Therefore, the July 29, 1985 entry must be considered only the announcement of the trial court's decision as contemplated by Civ.R. 58.

*Id. Accord Giambrone v. Spalding And Evenflo Co.*, 2d Dist. Miami No. 96CA08, 1997 WL 189465, *5 (Apr. 18, 1997), *Gates v. Praul*, 10th Dist. Franklin No. 09AP-123, 2010-Ohio-2062, ¶ 17, and *State v. Crosby*, 12th Dist. Clermont No. CA2009-01-001, 2009-Ohio-4936, ¶ 17-18.

{¶ 53} In the case before us, the judgment of March 8, 2016 simply granted the motion to dismiss the CPO; it did not enter judgment regarding the CPO. The nunc pro tunc judgment of March 16, 2016, also did not enter judgment regarding the CPO. Instead the court instructed Keesha's counsel to prepare a judgment entry modifying or terminating the CPO, and this judgment was subsequently filed on March 24, 2016.

{¶ 54} The judgment filed on March 24, 2016, also contained different content from the earlier entries, as the prior orders granted the motion to dismiss based on the matters contained in the motion that had been filed on May 29, 2015. *See, e.g.*, Judgment Entry and Finding of Contempt, Doc. # 153, p. 2.

{¶ 55} The motion to dismiss discussed events that occurred in 2013 prior to the time the CPO was granted, pointed out inconsistencies in Douglas's testimony and behavior, and asserted that there was no ongoing threat, as well as the fact that the CPO was causing problems with Keesha's military career. Motion to Dismiss, Case No. 2013-DV-196, Doc. #31, p. 2.

{¶ 56} In contrast, the judgment filed on March 24, 2016, made specific findings, including findings on all the factors trial courts are required to consider under R.C. 3113.31(E)(8)(c) when modifying or terminating a protection order. *See* Judgment Entry on Motion to Modify or Terminate Domestic Violence Civil Protection Order or Consent Agreement, Case No. 2013-DV-196, Doc. #89, pp. 1-2. These factors include:

> (i) Whether the petitioner consents to modification or termination of the protection order or consent agreement;

> (ii) Whether the petitioner fears the respondent;

> (iii) The current nature of the relationship between the petitioner and the respondent;

> (iv) The circumstances of the petitioner and respondent, including the relative proximity of the petitioner's and respondent's workplaces and residences and whether the petitioner and respondent have minor children together;

(v) Whether the respondent has complied with the terms and conditions of the original protection order or consent agreement;

(vi) Whether the respondent has a continuing involvement with illegal drugs or alcohol;

(vii) Whether the respondent has been convicted of, pleaded guilty to, or been adjudicated a delinquent child for an offense of violence since the issuance of the protection order or approval of the consent agreement;

(viii) Whether any other protection orders, consent agreements, restraining orders, or no contact orders have been issued against the respondent pursuant to this section, section 2919.26 of the Revised Code, any other provision of state law, or the law of any other state;

(ix) Whether the respondent has participated in any domestic violence treatment, intervention program, or other counseling addressing domestic violence and whether the respondent has completed the treatment, program, or counseling;

(x) The time that has elapsed since the protection order was issued or since the consent agreement was approved;

(xi) The age and health of the respondent;

(xii) When the last incident of abuse, threat of harm, or commission of a sexually oriented offense occurred or other relevant information concerning the safety and protection of the petitioner or other protected parties.

R.C. 3113.31(E)(8)(c).

{¶ 57} The prior judgment entries did not make any of these findings, which are required. Consequently, under *Mintz*, the time for appealing the CPO judgment began on March 24. However, no notice of appeal was ever filed with respect to that judgment, and we have no ability to consider any issues pertaining to that order.

{¶ 58} In this regard, we note that the judgments entered on March 8, 2016 and March 16, 2016, also were not final with respect to the withholding order, because the court directed counsel to prepare an order on that issue as well. The final order in that regard was not filed until March 25, 2016, when the withholding order was filed. See Judgment Entry/Order Withholding Spousal Support Payments Through CSEA, Doc. #162. However, as was noted above, Douglas did ask to amend his notice of appeal with respect to the March 25, 2016 order, and we granted the request. Specifically, we found the request for amendment timely, because Douglas was never served with notice of the March 25, 2016 order. *See Barton v. Barton nka Evans*, 2d Dist. Greene No. 16-CA-12 (May 27, 2016), p. 2. Therefore, to the extent any issues are raised with respect to the withholding order, they would properly be before us.

{¶ 59} The same observations are not true with respect to the contempt order. The trial court did not indicate that anything further needed to be done, and that judgment was final as to the contempt order, sentence, and attorney fees ordered to be paid. We note that a Civ.R. 54(B) certification was included, which would have made the order appealable even though other matters remained pending. We further note that courts have held that a Civ.R. 54(B) certification is not required to make a contempt order final and appealable. *See Contos v. Monroe Cty.*, 7th Dist. Monroe No. 04 MO 3, 2004-Ohio-6380, ¶ 12. *See also Docks Venture, L.L.C.*, 141 Ohio St.3d 107, 2014-Ohio-4254, 22

N.E.3d 1035, at ¶ 23 (noting that "a court order finding a party in contempt and imposing a sentence conditioned on the failure to purge is a final, appealable order on the issue whether the party is in contempt of court").

{¶ 60} Based on the preceding discussion, we will not consider any issues pertaining to the dismissal of the CPO, because Douglas failed to timely appeal the final order in Case No. 2013-DV-196, nor did he timely request to amend his notice of appeal to include that order. We will consider issues pertaining to the contempt order, the withholding order, and the attorney fees that were awarded.

### III. Alleged Lack of Jurisdiction Due to Improper Caption

{¶ 61} Before we address the assignments of error, we note that Douglas has filed 12 assignments of error and has combined the issues presented with the assignments of error. At times, the assignments of error and discussion are rambling. Based on the entirety of what has been said in the brief, we will attempt to decipher what Douglas is really arguing, and to avoid confusion, will list his assignments of error as they are more concisely raised and argued as "issues" in the body of his brief.

{¶ 62} In addition, we must stress that "we have consistently held that pro se litigants are held to the same standards as other litigants." *Cox v. Oliver*, 2d Dist. Montgomery No. 26515, 2015-Ohio-3384, ¶ 20. "Litigants who choose to proceed pro se are presumed to know the law and correct procedure * * *." *Yocum v. Means*, 2d Dist. Darke No. 1576, 2002-Ohio-3803, ¶ 20, citing *Kilroy v. B.H. Lakeshore Co.* 111 Ohio App.3d 357, 363, 676 N.E.2d 171 (8th Dist.1996). Thus, "a pro se litigant 'cannot expect or demand special treatment from the judge, who is to sit as impartial arbiter.' " *Id.*,

quoting *Kilroy* at 363. We specifically reminded Douglas of these points during his last appeal. *Barton II*, 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264, at ¶ 10. With these points in mind, we move to consideration of the assignments of error.

{¶ 63} Douglas's First Assignment of Error states that:

Was [the] Judgment an Absence or Excess of Jurisdiction, and a Sham Legal Process?

{¶ 64} Under this assignment of error, Douglas argues that the trial court lacked jurisdiction and committed an abuse of discretion because the March 8, 2016 judgment entry bears the caption of "Montgomery County, Ohio." As Douglas suggests, the Supreme Court of Ohio has said that "[i]n Ohio a court speaks through its journal. Accordingly, it is imperative that the court's journal reflect the truth." *State ex rel. Worcester v. Donnellon*, 49 Ohio St.3d 117, 118, 551 N.E.2d 183 (1990).

{¶ 65} However, the error in the case caption was corrected through the nunc pro tunc entry filed on March 16, 2016, which changed the county in the caption from Montgomery to Greene. "An order issued 'nunc pro tunc' – Latin for 'now for then' – is defined as '[h]aving retroactive legal effect through a court's inherent power.' " *In re E.B.*, 1st Dist. Hamilton No. C-150351, 2016-Ohio-1507, ¶ 9, quoting Black's Law Dictionary 1100 (8th Ed.2004). "Such order must reflect 'what the court actually decided, not what the court might or should have decided or what the court intended to decide.' " *Id.*, quoting *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164, 656 N.E.2d 1288 (1995).

{¶ 66} The trial court's action in correcting the caption was also consistent with Civ.R. 60(A), "which codifies the common law power of courts to enter nunc pro tunc orders." (Citations omitted.) *Daniels-Rodgers v. Rodgers*, 10th Dist. Franklin No. 15-

AP-202, 2015-Ohio-1974, ¶ 10. Civ.R. 60(A) states that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court."

{¶ 67} In the case before us, the trial court filed the nunc pro tunc entry on March 16, 2016, prior to the time that Douglas filed his notice of appeal (March 18, 2016), and prior to the time the appeal was docketed in our court. As a result, the trial court did not need our permission to correct the clerical error. The court's action properly corrected a clerical error in the March 8, 2016 entry, and the court did not abuse its discretion. *See, e.g., Tri-State Truck & Equip. Sales v. Cepeda*, 6th Dist. Williams No. 91WM00010, 1992 WL 318992, *3 (Nov. 6, 1992) [noting that the trial court had properly corrected an erroneous case number on a judgment through a nunc pro tunc entry, pursuant to the court's authority under Civ.R. 60(A)].

{¶ 68} Accordingly, the First Assignment is without merit and is overruled.


IV. Alleged Fraudulent Judgment

{¶ 69} Douglas's Second Assignment of Error states as follows:

Was [the] Judgment [a] Fraud upon the Court?

{¶ 70} Under this assignment of error, Douglas argues that Judge Stucki's March 8, 2016 order was fraudulent because it was based on Judge Campbell's prior order (the

divorce decree), which was a fraud.   However, any issues pertaining to the validity of the divorce decree are barred by res judicata.

**{¶ 71}** "*Res judicata* is a doctrine of judicial preclusion.   It states that '[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.' "   *Lamar Outdoor Advertising v. City of Dayton Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 18902, 2002 WL 1349600, *2 (June 21, 2002), quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), paragraph one of the syllabus. (Italics sic.)   " 'The doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel).' "   *CTI Audio, Inc. v. Fritkin-Jones Design Group, Inc.*, 144 Ohio App.3d 449, 452, 760 N.E.2d 842 (2d Dist. 2001), quoting *Grava* at 381. (Italics sic.) "The prior judgment must be an order or decree entered on the merits by a court of competent jurisdiction."   *Lamar* at *2, citing *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943).

**{¶ 72}** As was noted, the final divorce decree was filed on September 12, 2014. Douglas appealed from that judgment, but we dismissed the appeal, and the Supreme Court of Ohio refused to accept jurisdiction of Douglas's further appeal.   The divorce decree, therefore, was final, and any attempt to re-litigate issues pertaining to the divorce decree are barred by res judicata.   We also rejected Douglas's appeal of the denial of motion for relief from judgment, and there is, thus, no recourse for further challenging the divorce decree.   *Barton II*, 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264.

**{¶ 73}** Under this assignment or error, Douglas also claims that Judge Stucki

lacked jurisdiction to rule because the denial of the motion for Civ.R. 60(B) relief was on appeal. Typically, "once an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." (Citations omitted.) *State ex rel. Rock v. School Emp. Retirement Bd.*, 96 Ohio St.3d 206, 2002-Ohio-3957, 772 N.E.2d 1197, ¶ 8. However, the trial court can act on issues that are not inconsistent with the reviewing power of the appellate court. *State ex rel. State Fire Marshal v. Curl*, 87 Ohio St.3d 568, 570, 722 N.E.2d 73 (2000).

**{¶ 74}** As was noted above, Judge Stucki considered five matters during the hearing and in his decision of March 8, 2016: (1) the motion for contempt for failure to pay attorney fees; (2) the motion for a withholding order for payment of spousal support; (3) dismissal of the CPO against Keesha; (4) attorney fees for prosecuting the motions; and (5) the issue of the motion to compel discovery and the trial court's order pertaining to sanctions. We will consider each of these matters separately, other than the dismissal of the CPO, which we will not consider.

(A) Contempt

**{¶ 75}** The law is well-established that "a court may enforce its own orders, including divorce decrees." *Stocker v. Stocker*, 9th Dist. Wayne No. 12CA0021, 2012-Ohio-5821, ¶ 30, citing R.C. 3105.65(B). "Under Civ.R. 75(I), the continuing jurisdiction of a court that issues a domestic relations decree 'may be invoked by the filing of any motion by a party.' " *State ex rel. Soukup v. Celebrezze*, 83 Ohio St.3d 549, 551, 700 N.E.2d 1278 (1998), quoting *Blake v. Heistan*, 99 Ohio App.3d 84, 87, 649 N.E.2d 1304

(3d Dist.1994). "A postdecree show-cause motion filed by a party invokes both the inherent power of a domestic relations court to enforce its own orders and the court's continuing jurisdiction under Civ.R. 75(I)." *Id.*

**{¶ 76}** The trial court's action did not affect our ability to modify, vacate, or reverse the judgment. Specifically, while the order for payment of attorney fees was in place, Douglas was required to follow the order. *Compare Quint v. Lomakoski*, 173 Ohio App.3d 146, 2007-Ohio-4722, 877 N.E.2d 738, ¶ 13-14 (2d Dist.) (rejecting contemnor's argument that she was not in contempt of a parenting plan agreement because the agreement was effectively vacated by subsequent decisions of the trial and appellate courts.). We noted in *Quint* that the parenting order was lawful at the time the "contumacious conduct" took place, and that the contempt finding was not contrary to law. *Id.* at ¶ 14. Similarly, Douglas's failure to pay attorney fees as directed was in contempt of a court order, regardless of whether he agreed with the order, or whether the order might eventually be reversed.

**{¶ 77}** More importantly, however, contempt is a collateral matter that may be considered while an appeal is pending, and is not inconsistent with appellate ability to review, affirm, or reverse judgments. *Curl*, 87 Ohio St.3d at 570, 722 N.E.2d 73. *Accord Newcomer v. Newcomer*, 6th Dist. Lucas No. L-13-1029, 2013-Ohio-5626, ¶ 14-15. "A trial court, however, lacks jurisdiction to execute a judgment or contempt proceedings regarding the judgment if there is a stay of the judgment pending appeal." (Citations omitted.) *Curl* at 570.

**{¶ 78}** In the case before us, there was no stay of the judgment pending appeal. Douglas could have obtained a stay of the trial court proceedings, and his failure to do so

was due to the fact that he did not properly articulate his position while applying for a stay. Moreover, even after being advised of that fact, he failed to do anything to clarify his position with our court. As we stressed earlier, even though Douglas is a pro se litigant, he is held to the same standards as litigants who are represented by counsel. As a result, the trial court did not lack jurisdiction over the contempt motion.

(B)  Issuance of a Withholding Order for Spousal Support

{¶ 79} The second issue that the trial court considered was whether a withholding order for spousal support should be issued. This matter was also properly considered by the trial court despite the pending appeal of the decision on the Civ.R. 60(B) motion. In view of authority from the Supreme Court of Ohio, the issuance of the withholding order did not interfere with our ability to reverse, modify, or affirm the trial court's decision.

{¶ 80} In *Morris v. Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, ___ N.E.3d ___, the Supreme Court of Ohio considered whether trial courts have jurisdiction to vacate or modify spousal support awards under Civ.R 60(B) where a decree of divorce or dissolution fails to contain a reservation of jurisdiction to modify the award pursuant to R.C. 3105.18(E). *Id.* at ¶ 1. The court concluded that trial courts lack jurisdiction to consider such matters, because Civ.R. 60 is a procedural rule and cannot supersede substantive law that controls whether trial courts have the ability to modify a periodic payment of spousal support. *Id.* at ¶ 29-32.

{¶ 81} In discussing the matter, the court noted its prior acknowledgement that "the General Assembly had enacted former R.C. 3105.18(D), the predecessor to R.C. 3105.18(E), in response to *Wolfe [v. Wolfe*, 46 Ohio St.2d 399, 350 N.E.2d 413 (1976)]."

*Id.* at ¶ 28, citing *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, ¶ 24. *Wolfe* had relied on the common law to conclude that "when a spousal-support award based on an agreement between the parties is not part of the property division and the decree provides that the remarriage or death of the spouse to whom support is awarded will terminate the support, there is an 'implied' reservation of jurisdiction in the trial court to modify the award." *Id.* at ¶ 23, citing *Wolfe* at 415-416. The General Assembly then enacted former R.C. 3105.18(D) [now R.C. 3105.18(E)] in response to *Wolfe.* *Id.* at ¶ 24.

**{¶ 82}** *Mandlebaum* stated that " '[w]hile [former R.C. 3105.18(D)] codified the common-law requirement of a change in circumstances, its foremost purpose was to declare that a trial court lacks jurisdiction to modify the amount or terms of an order of spousal support unless a provision in either the divorce decree or the separation agreement incorporated into the decree of divorce or dissolution specifically authorizes modification.' " *Morris* at ¶ 28, quoting *Mandelbaum* at ¶ 24. The court further observed in *Morris* that "[t]herefore, the General Assembly swept away all the common law enunciated in *Wolfe*, including this court's holding in *Law* that a trial court had the authority to modify a spousal-support award if there was fraud or mistake even though the decree did not reserve jurisdiction, 64 Ohio St. 369, 60 N.E. 560, and this court's holding in *Newman* that a trial court had the authority to modify a spousal-support award if there was 'mistake, misrepresentation or fraud' even though the decree did not reserve jurisdiction. 161 Ohio St. 247, 118 N.E.2d 649, at syllabus." *Morris* at ¶ 28, referencing *Law v. Law*, 64 Ohio St. 369, 60 N.E. 560 (1901), and *Newman v. Newman*, 161 Ohio St. 247, 118 N.E.2d 649 (1954).

{¶ 83} As we noted, the court then went on to state that Civ.R. 60 is a rule of procedure and that it cannot supersede substantive law that controls whether trial courts have the ability to modify a periodic payment of spousal support. *Morris*, 148 Ohio St.3d 138, 2016-Ohio-5002, ___ N.E.3d ___, at ¶ 29-32. The court ultimately concluded that:

> In R.C. 3105.18(E), the General Assembly has established the limits of a trial court's jurisdiction to modify an award of spousal support. And a party's request for modification falls within those statutory limits only if the parties agree or the court orders that jurisdiction be reserved. In other words, the trial court must first determine whether the decree of divorce or dissolution contains a reservation of jurisdiction. If the trial court lacks jurisdiction to modify, then the inquiry of the court ends there. To permit a trial court to exercise jurisdiction on the authority of Civ.R. 60(B) in the absence of a reservation of jurisdiction would make the force of the procedural rule greater in scope than the substantive right the General Assembly established in R.C. 3105.18(E). Because Civ.R. 60(B) is a procedural rule, it cannot override the substantive law of R.C. 3105.18(E). *See* Ohio Constitution, Article IV, Section 5(B).

*Id.* at ¶ 57.

{¶ 84} On this basis, the trial court's consideration of the motion for a withholding order would not have interfered with our ability to reverse, modify, or affirm the judgment. The Bartons' divorce decree did not reserve jurisdiction over spousal support, and the trial court would not have had jurisdiction to use Civ.R. 60(B) to modify or vacate the spousal support order. As a result, on appeal, we would have had to conclude that Civ.R.

60(B) was not available to Douglas. Under these circumstances, the trial court's issuance of an order to withhold spousal support based on the divorce decree could not have interfered with our appellate jurisdiction.

(D) Attorney fees

{¶ 85} As was noted, we will not consider issues pertaining to the dismissal of the CPO. The fourth issue the trial court considered was whether attorney fees should be awarded to Keesha in connection with the prosecution of the contempt motion and in connection with prosecution of the motion for a withholding order. It is well settled that trial courts have "discretion to include reasonable attorney fees as a part of costs taxable to a defendant found guilty of civil contempt." (Citations omitted.) *State ex rel. Fraternal Order of Police Captain John C. Post Lodge No. 44 v. City of Dayton*, 49 Ohio St.2d 219, 229, 361 N.E.2d 428 (1977). *Accord Passage v. Passage*, 2d Dist. Greene No. 2015-CA-36, 2016-Ohio-1097, ¶ 31. Thus, the issue of attorney fees was intertwined with the contempt issue, and the court did not lack jurisdiction to consider attorney fees.

{¶ 86} In addition, R.C. 3105.73(B) states that "[i]n any post-decree motion or proceeding that arises out of an action for divorce * * *, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." As a result, the issue of attorney fees was also intertwined with the motion for a withholding order to obtain spousal support. Again, the motion for a withholding order was properly before the trial court.

{¶ 87} Because the attorney fees are part and parcel of the contempt and withholding issues, the trial court had jurisdiction to consider them.

(E)   Discovery order

**{¶ 88}** The final issue considered was the motion to compel discovery.   However, Douglas conceded in the trial court that this issue was not under appeal and was properly before the court.   March 7, 2016 Transcript of Proceedings, p. 11.

**{¶ 89}** Based on the preceding discussion, the trial court had jurisdiction over the proceedings.   The Second Assignment of Error, therefore, is overruled.


V.   Dismissal of the CPO

**{¶ 90}** Douglas's Third Assignment of Error states that:

Was This [The Dismissal of the CPO] Abuse of Discretion, Abuse of Power, Corruption and Incompetence of the Trial Court for a Pre-Determined Decision?

**{¶ 91}** Under this assignment of error, Douglas argues that his due process rights were violated because jurisdiction over the CPO was lost at the point of Judge Hurley's "unlawful protection order."   As was noted, the appeal of the CPO is not before us because Douglas failed to file a notice of appeal from the final order pertaining to the CPO – the final judgment entered on March 24, 2016.   Douglas also did not ask to amend his notice of appeal to include this judgment entry, and as we noted, we will not consider issues pertaining to dismissal of the CPO.

**{¶ 92}** Accordingly, the Third Assignment of Error is overruled.


VI.   Abuse of Discretion in Contempt Finding

**{¶ 93}** Douglas's Fourth Assignment of Error states that:

Was This [the Contempt Finding and Award of Attorney Fees] Abuse of Discretion, Abuse of Power, Corruption and Incompetence by The Trial Court for a Pre-Determined Decision and Having Lost Subject-Matter Jurisdiction?

**{¶ 94}** The argument Douglas makes in this context is that the contempt order was improper because it was based on Judge Hurley's prior fraudulent order. However, the contempt order was based on Douglas's failure to pay attorney fees as ordered by Judge Campbell, and any prior order of Judge Hurley had nothing to do with this issue.

**{¶ 95}** Even if the order of Judge Hurley that Douglas is referencing was the denial of the motion for relief from judgment, Douglas's appeal of the judgment of divorce was dismissed and his motion to set aside the divorce decree was rejected in *Barton II*. *See Barton II*, 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264, at ¶ 13-29 (affirming the trial court's denial of Douglas's motion for relief from judgment). As a result, any arguments about the validity of the divorce decree are barred by res judicata.

**{¶ 96}** Furthermore, Douglas's contempt was amply demonstrated. "Contempt is defined in general terms as disobedience of a court order." *State ex rel. Corn v. Russo,* 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). "The power of contempt is inherent in a court, such power being necessary to the exercise of judicial functions." (Citations omitted.) *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). "A common pleas court has both inherent and statutory power to punish contempts * * *." *Burt v. Dodge*, 65 Ohio St.3d 34, 35, 599 N.E.2d 693 (1992), citing *Zakany v. Zakany*, 9 Ohio St.3d 192, 459 N.E.2d 870, syllabus (1984).

{¶ 97} "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order." (Citation omitted.) *Corn* at 554. "Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence or fine. * * * Its sanctions are punitive in nature, designed to vindicate the authority of the court." *Denovchek* at 16. "Thus, civil contempts are characterized as violations against the party for whose benefit the order was made, whereas criminal contempts are most often described as offenses against the dignity or process of the court." (Citation omitted.) *Corn* at 555. *Accord State v. Chavez-Juarez*, 185 Ohio App.3d 189, 2009-Ohio-6130, 923 N.E.2d 670, ¶ 25 (2d Dist.).

{¶ 98} We review contempt orders for abuse of discretion. (Citation omitted.) *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 21. This means that the trial court acted unreasonably, arbitrarily, or unconscionably. (Citation omitted.) *Id.* This is a "highly deferential standard of review," and "we will not lightly substitute our interpretation for that of the issuing court." Citations omitted.) *Id.* at ¶ 29.

{¶ 99} The record below could not be more clear concerning the contempt finding. At the contempt hearing, Douglas emphatically stated that he had not paid any attorney fees that had been ordered, and that he would never pay the fees. The trial court concluded that Douglas was guilty of contempt, and we agree. In addition, Keesha presented expert testimony as to the reasonableness of the fees that she had incurred. Under the circumstances, the finding of contempt and the award of reasonable fees were well-supported by the evidence and were not an abuse of discretion.

{¶ 100} Based on the preceding discussion, the Fourth Assignment of Error is

overruled.

## VII.   Extortion Allegation

{¶ 101} Douglas's Fifth Assignment of Error states that:

Was This [The Contempt Judgment] Extortion?

{¶ 102} Under this assignment of error, Douglas repeats the same comments as he did with respect to the Fourth Assignment of Error, but instead states that the contempt judgment was "extortion," again based on the prior fraudulent order of Judge Hurley.   For the reasons previously discussed, this assignment of error is barred by res judicata, is without merit otherwise, and is overruled.

## VIII.   Fraud Allegedly Voiding All Judgments

{¶ 103} Douglas's Sixth Assignment of Error states as follows:

Was [the] Judgment [a] Fraud Upon the Court[,] Thereby Voiding All Judgments[,] and Subject Matter Jurisdiction Was Lost Due to Unlawful Errors?

{¶ 104} Under this assignment of error, Douglas seems to be referring to the motion for relief from judgment, and contends that Judge Hurley could not rule on that matter because the judge was a "material witness."   Douglas also argues under this assignment of error that Judge Hurley could not issue a restraining order because he had previously been removed from the case.

{¶ 105} These issues were considered in Barton *II* and are barred by res judicata. We concluded in *Barton II* that Judge Hurley had erred by issuing a restraining order

preventing Douglas from contacting Judge Campbell ex parte, because the order was not issued in accordance with procedures provided by Ohio law. *Barton II,* 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264, at ¶ 11-12. We found that Douglas was not permitted in any event to contact the judge ex parte, and there was no prejudice once Judge Campbell had recused himself from all of Douglas's cases. *Id.* at ¶ 12. We did vacate the restraining order, however, because it "had no temporal limitation, continued to exist and prohibited more than just ex parte communications." *Id*.

**{¶ 106}** In *Barton II*, we also found that the trial court did not abuse its discretion in denying Douglas's motion for relief from judgment. *Id*. at ¶ 13-29. Again, this means that Douglas's current arguments are barred by res judicata.

**{¶ 107}** We have said that "res judicata does not bar review of claims based on lack of subject-matter jurisdiction. 'Jurisdiction means the courts' statutory or constitutional power to adjudicate the case.' " *State v. Lawrence*, 2d Dist. Montgomery No. 27014, 2016-Ohio-7626, ¶ 6, quoting *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E 2d 992, ¶ 11. " 'It is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable.' * * * 'Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time.' " *Id.*, quoting *Pratt* at ¶ 11-12.

**{¶ 108}** In *Lawrence*, we stressed that error does not create void judgments, unless it involves the court's subject matter jurisdiction. We emphasized that "[a] void judgment is one that has been imposed by a court that lacks subject-matter jurisdiction over the case or the authority to act. *See State v. Payne*, 114 Ohio St.3d 502, 2007-

Ohio-4642, 873 N.E.2d 306, ¶ 27. Unlike a void judgment, a voidable judgment is one rendered by a court that has both jurisdiction and authority to act, but the court's judgment is invalid, irregular, or erroneous." *Lawrence* at ¶ 9.

**{¶ 109}** Thus, while Judge Hurley erred in imposing a restraining order, the judgment was not void, because the error did not involve the court's subject matter jurisdiction. In this regard, we noted in *Barton II* that "Barton's claim that Judge Hurley committed a fraud upon the court by issuing the restraining order against him has already been resolved under Barton's first argument, as we found the restraining order was overly broad. Such a mistake, however, does not warrant relief from the final decree of divorce." *Barton II*, 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264, at ¶ 25.

**{¶ 110}** In *Barton II*, we also rejected Barton's claim of judicial misconduct, noting that "the proper method by which to raise such allegations is by a grievance filed before the Board of Commissioners on Grievances and Discipline, not by a brief filed before this court." *Id.* at ¶ 32. Again, if Douglas has a complaint or grievance about a judge, this court is not the proper avenue. The trial court clearly had subject matter jurisdiction over domestic relations cases, and its judgment was not void.

**{¶ 111}** Accordingly, the Sixth Assignment of Error is without merit and is overruled.

IX.

**{¶ 112}** Douglas's Seventh Assignment of Error states that:

Was [the] Judgment [a] Constitutional Violation (if the Constitution is

the Highest Authority in the Land, a "Rule" That Voids a Right is Inherently

Unconstitutional[)]?

{¶ 113} This assignment of error focuses on Judge Stucki's decision and argues that it was an abuse of discretion, an abuse of power, corruption and incompetent. For the reasons previously discussed, this assignment of error is without merit and is overruled.

{¶ 114} Furthermore, the majority of Douglas's discussion involves the right to jury trial and indecipherable comments about the prenuptial agreement and the right to contract. These issues were considered in *Barton II* or could have been considered in the direct appeal that was dismissed. Therefore, these claims are barred by res judicata. *Barton II*, 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264, at ¶ 30.

{¶ 115} As we mentioned in *Barton II*, Civ.R. 75(C) provides that "[i]n proceedings under this rule there shall be no right to trial by jury." The 1970 staff notes to Civ.R. 75(C) indicate that "Rule 75(C) merely recognizes the established law and reiterates the fact that there is no right to a jury trial in the actions covered by Rule 75."

{¶ 116} Douglas argues that the right to a jury trial under Article I, Section 5 of the Ohio Constitution is "inviolate" and that Civ.R. 75(C) cannot constitutionally invade the right. "However, the right is not absolute." *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 32, citing *Arrington v. DaimlerChrysler Corp.*, 109 Ohio St.3d 539, 2006-Ohio-3257, 849 N.E.2d 1004, ¶ 22. Instead, "Section 5, Article I guarantees a right to a jury trial only for those causes of action in which the right existed in the common law when Section 5 was adopted." *Id.* For example, worker's compensation was not known at common law, and litigants in workers' compensation appeals are limited to what right to a jury trial the General Assembly

confers. *Arrington* at ¶ 24-27.

**{¶ 117}** Justice Cupp's concurring opinion in *Arbino* elaborated that "[t]he right to a trial by jury is guaranteed only for those causes to which the right attached at common law when the Ohio Constitution was adopted in 1802." *Arbino* at ¶ 117, citing *Belding v. State ex rel. Heifner*, 121 Ohio St. 393, 169 N.E. 301 (1929), paragraph one of the syllabus (Cupp, J., concurring).

**{¶ 118}** The Supreme Court of Ohio has noted that "[t]here was no common-law right of divorce. Divorce is purely a matter of statute." *Jelm v. Jelm*, 155 Ohio St. 226, 231, 98 N.E.2d 401 (1951), citing *De Witt v. De Witt*, 67 Ohio St. 340, 66 N.E. 136 (1902). In *Jelm*, the court further observed that:

> Divorce was authorized by statute and laws governing the Northwest Territory. In December 1804, the Legislature of the newly created state of Ohio passed an act authorizing divorce and vested sole jurisdiction with respect thereto in the Supreme Court. 3 Ohio Laws, 177. Amendatory acts were passed in 1822 and 1824. In 1840 a comprehensive divorce law was enacted, 38 Ohio Laws, 37, stating grounds for divorce substantially as they appear in present-day statutes. By the enactment of March 13, 1843, 41 Ohio Laws, 94, the Common Pleas Court was given concurrent jurisdiction with the Supreme Court in divorce matters * * * .

*Id.* at 231-232. *Accord Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, 950 N.E.2d 516, ¶ 6 (divorce is a statutory proceeding that did not exist at common law).

**{¶ 119}** Thus, divorce was not a common law cause of action to which the right of

jury trial attached when the Ohio Constitution was adopted in 1802; it was a statutory creation authorized in 1804. As a result, there is no merit to Douglas's argument that Civ.R. 75(C) infringes upon the "inviolate" right to trial by jury.

{¶ 120} Based on the preceding discussion, the Seventh Assignment of Error is overruled.

X.   Allegation that the Judgment Failed to Follow Statutory Procedure

{¶ 121} Douglas's Eighth Assignment of Error states that:

[The] Judgment Failed to Follow Statutory Procedure Thereby Voiding All Judgments.

{¶ 122} Under this assignment of error, Douglas argues that Judge Campbell's judgment (the divorce decree and the failure to accept the prenuptial agreement) was void and can be attacked anytime.   As was previously noted, the trial court had subject matter jurisdiction over the case, and the judgment is not void.   Further, any arguments pertaining to the divorce decree are barred by res judicata.   Accordingly, the Eighth Assignment of Error is without merit and is overruled.

XI.   Allegations of Infringement of Civil Rights

{¶ 123} Douglas's Ninth Assignment of Error is as follows:

Was [the judgment against Douglas] a violation of 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986?

{¶ 124} Under this assignment of error, Douglas contends that the judgment against him infringes on multiple civil rights.   He mentions several statutes, including 42

U.S.C. 1983, 42 U.S.C. 1985, and 42 U.S.C. 1986. However, the only discussion under this assignment of error refers to events that occurred in 2013, and any arguments based on events prior to the filing of the divorce decree are barred by res judicata. Furthermore, the judge who presided over the contempt hearing in March 2016 is not named as an individual who had knowledge of the facts in 2013 that Douglas mentions.

**{¶ 125}** Nonetheless, even if we assumed these arguments are being made in connection with the 2016 contempt hearing, we have previously stated, and continue to stress that if Douglas has complaints about the misconduct of any judge, his remedy is to file a grievance with the Board of Commissioners on Grievance and Discipline. *Barton II*, 2d Dist. Greene No. 2015-CA-53, 2016-Ohio-5264, at ¶ 31. We have previously also stressed that allegations of criminal wrongdoing "have no place in the appeal of a civil matter." *Alex-Bell Oxford Ltd. Partnership v. Woods*, 2d Dist. Montgomery No. 16038, 1998 WL 289028, *5 (June 5, 1998).

**{¶ 126}** Based on the preceding discussion, the Ninth Assignment of Error is overruled.


XII.   Allegations Concerning Removal of the CPO

**{¶ 127}** Douglas's Tenth Assignment of Error is as follows:

Was Appellant's Judgment Against Him for Was [sic] a Pre-Determined Decision, Abuse of Discretion, Against the Ohio Code of Judicial Conduct-Canon 1[,] Lack of Integrity, Impartiality and Appearance of Impropriety. Rule 1.1[,] The Trial Court Did Not Comply With the Law. Rule 1.2[5]; Cannon 2[,] Rule 2.2, Rule 2.3(A), (C); Rule 2.5(A), (B); Rule 2.6(A); Rule

2.12(A), (B)?

{¶ 128} Under this assignment of error, Douglas contends that the dismissal of the CPO was a predetermined decision, an abuse of discretion, and violates various canons relating to judicial integrity. These claims raise the same objections as contained in Assignments of Error Four and Nine, and are rejected for the reasons expressed in discussing those assignments of error. As was noted, we will not consider issues pertaining to dismissal of the CPO.

{¶ 129} Douglas does add a claim of gender bias under this assignment of error, based on the fact that his ex-wife did not have to have her pleadings preapproved by the compliance office before filing. To the extent this could pertain to matters properly under appeal, we will consider it. However, Douglas's argument is without merit.

{¶ 130} Keesha was represented by counsel, and Douglas acted pro se. The Local Rules for the Greene County Domestic Relations Court provide in D.R. Rule 5.05 that:

All post decree Motions of any kind filed by pro se (unrepresented by counsel) parties must be in required form and will be reviewed and approved by the Compliance Office of the Domestic Relations Court. The pro se document shall not be filed with the Clerk of courts until it has been endorsed by the Compliance Office. The Clerk of Courts of Greene County, Ohio, shall not accept any such Motion for filing unless the approval of the Compliance Office is affixed thereon. In the event that such post decree Motion is found insufficient in any respect by the Compliance Office, the party seeking to file such Motion shall be notified.

{¶ 131} The requirement of submitting pleadings to the compliance office pertains to all pro se litigants, regardless of gender, and there is no evidence of gender bias. Accordingly, the Tenth Assignment of Error is overruled.

XIII.   Alleged False Imprisonment

{¶ 132} Douglas's Eleventh Assignment of Error states that:

This [The Contempt Sentence] Was False Imprisonment.

{¶ 133} Under this assignment of error, Douglas argues that he was falsely imprisoned because he was imprisoned for a debt, which Article I, Section 15 of the Ohio Constitution prohibits.   This section of the Ohio Constitution provides that "No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in cases of fraud."

{¶ 134} We have held that "contempt orders regarding the nonpayment of spousal support and child support * * * do not qualify as civil debts arising on express or implied contract, and they are outside the scope of the constitutional prohibition against imprisonment as a means of enforcing payment."   *State v. Lamb*, 163 Ohio App.3d 290, 2005-Ohio-4741, 837 N.E.2d 833, ¶ 14, fn.7 (2d Dist.), citing *Belding v. State*, 121 Ohio St. 393, 397-399, 169 N.E. 301 (1929).   In addition, courts have held that it is permissible to make payment of attorney fees a condition of purging contempt and to jail contemnors for failing to pay attorney fees.   *Brandenburg v. Brandenburg*, 11th Dist. Lake No. 2004-L-085, 2005-Ohio-6417, ¶ 10-11.   *See also Collette v. Baxter*, 9th Dist. Summit No. 25821, 2012-Ohio-1333, ¶ 9-15 (contempt order based on divorce litigant's failure to pay attorney fees that were assessed and sentencing him to jail for non-payment did not

violate constitutional prohibition against imprisoning a party for debt).

{¶ 135} In *Pugh v. Pugh*, 15 Ohio St.3d 136, 472 N.E.2d 1085 (1984), the Supreme Court of Ohio stated that "punishment for violation of divorce decree provisions does not impinge upon the constitutional prohibition against imprisonment for debts." *Id.* at 142, citing *Harris v. Harris*, 58 Ohio St.2d 303, 390 N.E.2d 789 (1979). Douglas was imprisoned for contempt for failing to comply with a divorce decree requiring him to pay attorney fees, not for a debt. As was previously discussed, Douglas was obviously in contempt of the order.

{¶ 136} Based on the preceding discussion, the Eleventh Assignment of Error is overruled.

XIV.   Alleged Denial of Right to Counsel

{¶ 137} Douglas's Twelfth Assignment of Error states that:

The Trial Court Abused Its Discretion and Erred to the Prejudice of Appellant in Violation of the U.S. and Ohio Constitutions and O.R.C. § 2705.031 When It Denied Appellant's Right to Counsel at Her [sic] Civil Contempt Hearing.

{¶ 138} Under this assignment of error, Douglas states that his motion for continuance was denied, that he never waived his right to counsel, and that the hearing was conducted under duress. He also argues that he was unable to call a key witness due to Judge Hurley's unlawful "protection order."

{¶ 139} The order to show cause filed on August 11, 2015, informed Douglas of his right to counsel for the contempt hearing, and of the procedure he should follow in

order to obtain representation if he were indigent. Order to Show Cause and Other Relief, Doc. #101, p. 2. In addition, a notice of rights was also attached to the order, outlining procedures Douglas should follow if he were indigent. *Id.*

{¶ 140} Douglas was also advised at a hearing held on December 8, 2015, of his rights under R.C. 2705.05, et. seq., and the trial court noted this fact in an entry filed on December 11, 2015. In addition, the trial court noted that Douglas had been advised of the advisability of obtaining counsel. The entry further stated that the contempt hearing would be held on March 7, 2016.

{¶ 141} On February 29, 2016, Douglas filed a motion to continue the March 7, 2016 hearing. His reason was not that he needed to obtain counsel; the motion was based on the fact that oral argument in his appellate case had been scheduled for May 17, 2016.

{¶ 142} At the hearing held on March 7, 2016, Douglas did not ask the court to appoint counsel nor did he indicate that he could not afford counsel. When asked by the court if he were representing himself, Douglas acknowledged that he was representing himself. March 7, 2016 Transcript of Proceedings, p. 4. Furthermore, Douglas's objection to proceeding with the hearing was not based on lack of counsel; it was based on his claim that the trial court lacked jurisdiction because his Civ.R. 60(B) motion for relief was on appeal. As was indicated, the trial court properly rejected that argument.

{¶ 143} R.C. 2705.02(A) allows contempt motions to be brought in situations where an individual has disobeyed an order of a court. "R.C. 2705.03 sets forth the procedure which must be followed in indirect contempt proceedings*." City of Cincinnati v. Cincinnati Dist. Council 51, Am. Fedn. of State, Cty. & Mun. Emp., AFL-CIO*, 35 Ohio

St.2d 197, 203, 299 N.E.2d 686 (1973). In pertinent part, R.C. 2705.03 provides that "[i]n cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel."

{¶ 144} In *State ex rel. Seventh Urban, Inc. v. McFaul*, 5 Ohio St.3d 120, 449 N.E.2d 445 (1983), the Supreme Court of Ohio observed that "the procedure outlined in R.C. 2705.03, requiring a written charge, an adversary hearing upon the issues, and an opportunity for the accused to be represented by counsel, should be strictly adhered to." (Citation omitted.) *Id.* at 122.

{¶ 145} Courts have extended due process requirements, including representation by counsel, to civil contempt proceedings under R.C. 2705.02. *See, e.g., Poptic v. Poptic*, 12th Dist. Butler No. CA2005-06-145, 2006-Ohio-2713, ¶ 8 (reversing contempt finding in case involving failure to comply with property division where the alleged contemnor, who lived out of state and had only a few days' notice of the contempt hearing, appeared at the hearing and requested a continuance to obtain counsel. However, the trial court denied his request. The Twelfth District concluded that this violated reasonable notice requirements and the contemnor's right to be represented by counsel).

{¶ 146} We have stated that under R.C. 2705.03, "an individual charged with indirect contempt must be provided with the following minimum constitutional due process protections: (1) notice of the charge of indirect contempt; (2) a hearing; (3) defense counsel; and (4) an opportunity to testify and call other witnesses." *Bucci v. Bucci*, 2d Dist. Greene No. 2012-CA-63, 2013-Ohio-1689, ¶ 9, citing *Hillman v. Edwards*, 10th Dist. Franklin No. 10AP-950, 2011-Ohio-2677, ¶ 29, and *Courtney v. Courtney*, 16 Ohio

App.3d 329, 332, 475 N.E.2d 1284 (3d Dist.1984).

{¶ 147} However, the fact that a right to be represented by counsel exists does not equate with a requirement that counsel must be appointed on an individual's behalf for a contempt hearing. In situations involving indigent litigants, some courts have required appointment of counsel in civil contempt proceedings. *See, e.g., In re Miami Cty. Grand Jury Directive to Creager*, 82 Ohio App.3d 269, 272, 611 N.E.2d 881 (2d Dist.1992), citing *Schock v. Sheppard*, 7 Ohio App.3d 45, 453 N.E.2d 1292 (6th Dist.1982). However, courts have also upheld denial of counsel where a litigant failed to meet the requirements for requesting counsel imposed by R.C. 2705.031(C).[4] *See Lipton v. Castanias*, 12th Dist. Warren No. CA2009-11-152, 2010-Ohio-4300, ¶ 20.

{¶ 148} In *Turner v. Rogers*, 564 U.S. 431, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011), the Supreme Court of the United States held that "the Due Process Clause does not automatically require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year)." *Id.* at 448. The court went on to stress that "[i]n particular, that Clause does not require the provision of counsel where the opposing parent or other custodian (to whom support funds are owed) is not represented by counsel and the State provides alternative procedural safeguards equivalent to those we have mentioned (adequate notice of the importance of ability to pay, fair opportunity to present, and to dispute, relevant information, and court findings)." *Id.*

---

[4] R.C. 2705.031 is a more specific section, dealing with contempt motions for failure to pay child or spousal support, and failure to comply with visitation and parenting orders. *See* R.C. 2705.031(B). The case before us does not involve a contempt motion brought under that section; the contempt motion was based on failure to pay attorney fees as ordered in the divorce decree.

{¶ 149} In a subsequent case involving a defendant's failure to pay both child support and unreimbursed medical expenses, the First District Court of Appeals concluded that the trial court's failure to appoint counsel for the contemnor did not violate any right to court appointed counsel under either the Due Process Clause or R.C. 2705.031(C).   In this regard, the court observed that:

Here, we cannot conclude the trial court's failure to appoint counsel for Stephen [the contemnor] violated any right to court-appointed counsel Stephen may have had under R.C. 2705.031 or the Due Process Clause. Stephen did not follow the procedure outlined in R.C. 2705.031(C).   He presented no evidence that he had applied for a public defender or court-appointed counsel.   Nor did he file an affidavit of indigency with the trial court.   Furthermore, we cannot conclude the trial court violated Stephen's due-process rights by failing to appoint him counsel where Stephen submitted no documentation to support his claim that he was indigent, both Stephen and Tiffany appeared pro se, and the record reflects that Stephen was provided with all the procedural safeguards delineated by the United States Supreme Court in *Turner*.

*Souders v. Souders*, 1st Dist. Hamilton No. C-150552, 2016-Ohio-3522, ¶ 18, citing *Turner*, 564 U.S. 431, 131 S.Ct. 2507, 180 L.Ed.2d 452.

{¶ 150} Even though the case before us involves R.C. 2705.03 rather than the more specific provision pertaining to child and spousal support (2705.031), this is a distinction without a difference.   We also agree with the approach followed by the First District Court of Appeals and find no deprivation of due process.   Like Stevens, Douglas

was given a notice containing the same requirements that R.C. 2705.031(C) imposes. However, he failed to follow the procedures outlined. Douglas was also advised at a hearing well in advance of the March 7, 2016 contempt hearing of his rights in the contempt proceeding and that it was advisable to obtain counsel. Like Stevens, Douglas failed to present any evidence of having applied for counsel, and presented no documentation of indigence. Therefore, under the analysis in Stevens, no due process violation occurred.

{¶ 151} Moreover, *unlike* Stevens, who asked for counsel to be appointed and asserted that he was indigent at a hearing held a month before the contempt hearing, Douglas *never asked for counsel and did not assert that he was indigent.* These are compelling reasons to conclude that no due process violation occurred. Furthermore, while the case before us differs slightly also in that Keesha did have counsel, that fact alone does not require a different result. Again, in contrast to the cases that we have discussed, there was no allegation in the trial court that Douglas was indigent.

{¶ 152} As to the denial of the motion for continuance, "the grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus. We, therefore, review for abuse of discretion. *Id.* at 67. An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553

N.E.2d 597 (1990).   "A decision is unreasonable if there is no sound reasoning process that would support that decision."   *Id.*

**{¶ 153}** "The circumstances present in each case should be considered in determining whether a trial court abuses its discretion in denying a motion for continuance."   (Citation omitted.)   *Davis v. Davis*, 2d Dist. Montgomery No. 26200, 2014-Ohio-4957, ¶ 11.   In deciding this issue, "[t]he reviewing court must apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party."   *Id.*

**{¶ 154}** Our review of the record indicates no abuse of discretion.   The court's original order to pay attorney fees and spousal support occurred on September 12, 2014, when the divorce decree was filed.   Nearly a year later, in August 2015, no fees or spousal support been paid, and Keesha filed a motion for contempt and a motion for a withholding order.   The court then scheduled a hearing on these motions for October 15, 2015.   This hearing was continued to December 9, 2015, based on Keesha's need to obtain new counsel.   According to the motion that Keesha's counsel filed, the withdrawal request was based on threats that Douglas had made on counsel's life.

**{¶ 155}** The December 9 hearing was rescheduled for December 8, 2015, and both parties appeared at the hearing.   At that time, the court continued the hearing until March 7, 2016, after advising Douglas that he should obtain an attorney.   The March 7 hearing date was about three months later.   However, Douglas waited until shortly before the hearing (February 29, 2016), to ask for a continuance based on the fact that oral argument had been scheduled in his pending appeal of the denial of his motion for relief

from judgment. The trial court denied the motion for continuance on March 1, 2016.

{¶ 156} Notably, we had rejected Douglas's motion for a stay months earlier, on October 13, 2015, based on the fact that we could not determine what actions he was asking to have stayed. *See Barton v. Barton*, 2d Dist. Greene No. 2015-CA-53, p. 1 (Oct. 13, 2015). Douglas did not thereafter attempt to correct this deficiency, and he would have been well aware that the appeal was proceeding at the time of the December 2015 hearing. Furthermore, the fact that oral argument was scheduled in his appeal added nothing new to the situation, and the motion for continuance appears to have been filed for purposes of delaying the contempt hearing. Accordingly, the trial court did not abuse its discretion in denying the motion for continuance.

{¶ 157} As a final matter, Douglas was not prevented from presenting any witnesses. The allegation in Douglas's brief refers to the fact that he was prevented from calling a key witness due to Judge Hurley's unlawful "protection order." Appellant's Brief, p. 16. This reference is unclear, but if it refers to the protection order Judge Hurley had filed, we reversed that order on September 23, 2015, months before the hearing. *See Barton I*, 2d Dist. Greene No. 2014-CA-21, 2015-Ohio-3869, ¶ 20 and 23.

{¶ 158} Moreover, the record reveals that Douglas did not file any subpoenas for witnesses prior to the March 7, 2016 hearing. Pursuant to the show cause order filed on August 11, 2015, Douglas was specifically advised of his right to obtain witnesses by compulsory process. *See* Order to Show Cause and for Other Relief, Doc. #101, p. 2.

{¶ 159} Based on the preceding discussion, Douglas's Twelfth Assignment of Error is overruled.

## XV.   Conclusion

**{¶ 160}** All of Douglas's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, P.J. and FROELICH, J., concur.

Copies mailed to:

Douglas C. Barton
Andrew Johnston
Hon. David E. Stucki